26 A.3d 1078

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Omar JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 2010.

Decided Aug. 16, 2011.

Ellen T. Greenlee, Defender Association of Philadelphia, Karl Baker, Peter Rosalsky, Defender Association of Philadelphia, Philadelphia, for Omar Johnson.

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, Peter Carr, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

This appeal concerns possession with intent to deliver heroin and, specifically, the question of whether the trial court properly calculated the total weight of heroin for the purpose of imposing a mandatory minimum sentence under 18 Pa. C.S.A. § 7508(a)(7)(i) of the Crimes Code. We hold that the trial court erred in finding that a single purchase of one bundle of packets of heroin from a third person, who retrieved the bundle from a parked Buick automobile, coupled with Appellant Omar Johnson's immediate resale of that bundle to an undercover officer, formed an adequate basis for its conclusion that Appellant was in constructive possession of a second bundle of packets of heroin stored inside of the Buick discovered during a subsequent police search of it. Accordingly, because the amount of heroin seized from the Buick was erroneously included by the trial court in the calculation of the total amount of heroin Appellant was found to have possessed with intent to deliver, thereby resulting in an improper imposition of a mandatory minimum term of three years imprison-

ment under 18 Pa.C.S.A. § 7508(a)(7)(i), we reverse and remand for resentencing.

The following relevant factual history of this case has been gleaned from the trial court's opinion and the certified record. On June 16, 2004, Philadelphia narcotics officer Richard Gramlich was conducting an undercover drug investigation when he received information from a confidential informant that someone named "Omar" was selling a brand of heroin called "party," as well as Oxycontin tablets. N.T. Trial, 2/15/05, at 9, 23. The informant additionally provided Officer Gramlich with a telephone number, which the informant claimed belonged to Omar and could be used to arrange a purchase of these drugs.

When Officer Gramlich dialed the number, a person identifying himself as Omar answered. Officer Gramlich informed this individual that he wanted to purchase "a bundle of party and three oxy–40s." [1] N.T. Trial, 2/15/05, at 9. Omar told Officer Gramlich to meet him at the intersection of Seventh and Girard streets in the City of Philadelphia. After Officer Gramlich had secured the assistance of backup officers, he proceeded to that location. Once there, Officer Gramlich had another phone conversation with Omar, and they finally met, face to face, in the parking lot of a Laundromat located at 600 Girard Street. *Id.* at 9–10. The individual whom Officer Gramlich met in person was Appellant, Omar Johnson.

Officer Gramlich requested that Appellant enter his unmarked car, and, after Appellant complied, Officer Gramlich repeated his prior request for heroin and Oxycontin. *Id.* at 10. At this point, Appellant exited the vehicle and spoke to another individual, later identified as Raheem Stoner, and the two entered Stoner's car—a green Chevrolet Lumina. *Id.* at 11. After a brief time, Appellant emerged from Stoner's car, re-entered Officer Gramlich's car, and handed Officer Gramlich a bundle of 11 packets stamped "party," as well as two tablets which Appellant claimed were Oxycontin. *Id.* at 12. In turn, Officer Gramlich gave Appellant $180.00 in pre-

---

1. "40" was a shorthand designation for the amount of Oxycontin, in milligrams, sought. N.T. Trial, 2/15/05, at 12.

recorded buy money with pre-recorded serial numbers, after which Appellant left the vehicle and began walking towards Stoner's car. Officer Gramlich then left the scene; however, one of his backup officers observed Appellant hand all of the money he had received from Officer Gramlich to Stoner. *Id.* at 12. Officer Gramlich later "field tested" the contents of one of the packets in the bundle he had obtained from Appellant, and he determined the test was positive for the presence of heroin. *Id.* at 13.

Two weeks later, on June 30, 2004, Officer Gramlich called Appellant to set up another drug transaction and they, again, arranged to meet at Seventh and Girard Streets. When Officer Gramlich arrived at this location, Appellant entered his vehicle and Officer Gramlich, once more, asked for a bundle of "party" heroin and three 40 milligram Oxycontin tablets. Appellant expressed uncertainty that he could obtain the Oxycontin due to the fact it was late in the day but stated that he would, nevertheless, make an effort to do so. Appellant left the car, entered a nearby bar, and returned a short time later with what he claimed was an 80 milligram Oxycontin tablet, for which Officer Gramlich paid him $50.00 in pre-recorded "buy money." Appellant then departed the scene in his own vehicle to obtain the requested heroin. Officer Gramlich remained behind to await his return.

Other officers followed Appellant once he had left Officer Gramlich's presence, and these officers observed Appellant meet another unidentified individual who retrieved something from a parked automobile [2] and handed it to Appellant. After this exchange, Appellant returned to where Officer Gramlich had parked, re-entered Officer Gramlich's vehicle, and took out a bundle of 13 packets stamped "polo" from his sock. According to Officer Gramlich, he gave Appellant $120.00 in pre-recorded buy money, and Appellant told him: "Next time call with your order so I don't have to run around." *Id.* at 15. After Appellant left, Officer Gramlich field tested one of the packets from this bundle, and it tested positive for heroin.

2. The make and model of this vehicle is not of record.

Finally, on July 6, 2004, Officer Gramlich made contact with Appellant by phone and asked him for another bundle of heroin, as well as an 80 milligram Oxycontin tablet. Officer Gramlich and Appellant once more met at the intersection of Girard Avenue and Seventh Street, whereupon Appellant got into Officer Gramlich's vehicle. Appellant took out a bundle of 12 packets of heroin bearing the stamp "check due." Officer Gramlich asked Appellant if he could obtain another bundle. *Id.* at 18. In response, Appellant stepped out of the vehicle and made a call, during which Officer Gramlich heard Appellant say he wanted "one jaun," which Officer Gramlich interpreted to mean a request for one bundle of heroin. *Id.* Appellant concluded the conversation, re-entered the vehicle, and told Officer Gramlich to drive up Seventh Street, which he did. *Id.*

At the intersection of Seventh and Master Streets, Appellant asked Officer Gramlich to pull over. *Id.* at 19. Appellant alighted from the vehicle and walked towards a gold Buick parked nearby. Another person, later identified as William Wilson, got out of the Buick, shook hands with Appellant, and began talking with him. According to Officer Gramlich this conversation occurred on the southwest corner of Seventh and Master Streets. *Id.* After a brief time, Officer Gramlich saw Wilson return to the Buick, reach inside the glove compartment area and retrieve a bundle of 13 packets, which bore the stamp "new era." [3] *Id.* at 19–20. Officer Gramlich then observed Wilson walk back to Appellant and give him these packets.[4] Appellant, in turn, walked over to Officer Gram-

---

**3.** Officer Gramlich later field tested the contents of a single packet from both the "check due" bundle and the "new era" bundle, and he determined that each test produced a positive result indicating the substance was heroin.

**4.** The recitation of this aspect of the factual history of this case contained in the trial court and Superior Court opinions comports with Officer Gramlich's testimony, *see* Trial Court Opinion, 5/26/06, at 3; *Commonwealth v. Johnson*, 920 A.2d 873, 876 (Pa.Super.2007). However, as discussed, *infra*, the Superior Court nevertheless erroneously stated later in its opinion that Appellant "**was present within** and obtained the drugs from the Buick." *Johnson*, 920 A.2d at 882 (emphasis added). The record does not support this statement as no evidence

lich's car and gave the packets to Officer Gramlich in exchange for $120.00 in pre-recorded buy money. Officer Gramlich watched Appellant subsequently return to Wilson and give him this money, as well as additional money which Appellant had in his pocket. Officer Gramlich saw the two men shake hands, after which Appellant re-entered Officer Gramlich's vehicle. *Id.* at 21. Officer Gramlich drove Appellant back to the Laundromat, which was the site of their first meeting, dropped him off, left the scene, and radioed backup officers to arrest Appellant. When he was taken into custody, Appellant was found with $140.00 in prerecorded buy money, additional cash, and two cell phones, one of which was the one used to communicate with Officer Gramlich. *Id.* at 51. Appellant's car was searched but no contraband was found therein. *Id.* at 45.

Stoner and Wilson also were arrested on July 6. A search of Stoner's car revealed a .45 caliber handgun, 12 packets of crack cocaine, and two tablets. Wilson was discovered to be carrying on his person $80.00 in pre-recorded buy money and the keys to the Buick from which he previously retrieved the bundle of 13 "new era" packets for Appellant. Officer Gramlich subsequently obtained a warrant to search the Buick. This search yielded a second bundle of twelve packets stamped "new era," as well as 14 packets of a chunky white substance, one packet of which was later tested by the Philadelphia Police Crime Laboratory and determined to be cocaine base. *Id.* at 21–22, 53.

With respect to the events of July 6, 2004, Appellant was charged via criminal information with one count of violating 35 P.S. § 780–101 (intentional possession of a controlled substance), one count of violating 35 P.S. § 780–113(a)(30) (prohibiting "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance," by a person not registered to do so under the Controlled Substances Act), one count of violating 18 Pa.C.S.A. § 903 (conspiracy to deliver

was presented at trial to suggest that Appellant ever entered the Buick at any time.

a controlled substance),[5] and one count of violating 18 Pa. C.S.A. § 7512 (unlawful use of a communication facility).

Appellant proceeded to a bench trial before former Philadelphia Common Pleas Court Judge Leslie Fleisher. At this trial Officer Gramlich testified, as did the other officers who had participated in the surveillance and apprehension of Appellant. Additionally, the Commonwealth introduced into evidence laboratory reports prepared by the Philadelphia Police Crime Laboratory detailing the analysis its technicians had performed on the contents of the bundles of packets and tablets seized by the police during the sales from Appellant to Officer Gramlich and, also, taken from the vehicles of Stoner and Wilson.[6] An individual report was prepared regarding each of the bundles purchased or seized.

All of the packets in the bundles consisted of two parts, a blue glassine insert containing a white substance which was, in turn, encased in a clear plastic packet.[7] In analyzing the contents of the packets from each of the respective seized bundles, the crime laboratory technicians selected a single packet from each bundle, chemically analyzed and weighed its contents, and listed the results for the packet on the report. The technicians did not, however, provide an estimated total weight for the contents of the entire bundle of packets. Instead, on three of the five reports they included a projection that the net weight of the contents of the bundle of packets fell below one gram.

After considering all of this evidence, the trial court acquitted Appellant of the charge of unlawful use of a communication facility, but found him guilty of the conspiracy, possession, and possession with intent to deliver charges. Because Appellant had previously been convicted of the offense of possession

5. The information listed the "criminal objective" of the conspiracy as the delivery of a controlled substance and the "overt act" in furtherance of the conspiracy to be possession of a controlled substance with intent to deliver.

6. The technicians who prepared the laboratory reports did not testify at either Appellant's trial or sentencing hearing.

7. Each of the reports stated the packaging of the bundles and the materials inside were consistent in their appearance.

with intent to deliver a controlled substance, and, due to the fact the trial court concluded the Commonwealth had established that Appellant possessed with intent to deliver more than one gram of heroin, it imposed a mandatory minimum sentence of three years incarceration upon Appellant for possession with intent to deliver pursuant to 18 Pa.C.S.A. § 7508(a)(7)(i), set forth *infra*.

In its opinion prepared pursuant to Pa.R.A.P. 1925(a), the trial court explained, in determining whether the application of the mandatory minimum sentence was required under this statute, it utilized a calculation of the total weight of each seized bundle of heroin, which was achieved by multiplying the measured weight of one packet in each bundle, as listed on the aforementioned crime laboratory reports, by the total number of packets in the bundle. Trial Court Opinion, 5/26/06, at 7. The trial court ruled that this method was "sufficient to prove by a preponderance of the evidence that the [Appellant] possessed in excess of one gram of heroin." *Id.*

The following table represents the estimated weights of the entire amount of heroin purchased and seized in this case using this means of extrapolation:

| JUNE 16, 2004 "PARTY" HEROIN SOLD TO OFFICER GRAMLICH | 11 PACKETS × 54 MILLIGRAMS | 594 MILLIGRAMS |
|---|---|---|
| June 30, 2004 "polo" heroin sold to Officer Gramlich | 13 packets × 20 milligrams | 260 milligrams |
| July 6, 2004 "check due" heroin sold to Officer Gramlich | 12 packets × 28 milligrams | 336 milligrams |
| July 6, 2004 "new era" heroin sold to Officer Gramlich | 13 packets × 27 milligrams | 351 milligrams |
| July 6, 2004 "new era" heroin seized from Buick during search | 12 packets × 36 milligrams | 432 milligrams |

The trial court noted that the quantity of heroin sold to Officer Gramlich by Appellant on June 16, June 30, and July 6, 2004 amounted to "approximately 1.5 grams." Trial Court

Opinion, 5/26/06, at 6. Including the amount of heroin recovered from the Buick, the trial court further found that the "total amount of heroin seized as a result of Officer Gramlich's investigation was approximately 1.9 grams." *Id.* Because the trial court viewed the three transactions between Appellant and Officer Gramlich as "a continuing course of conduct that was part of the defendant's overall participation in a narcotics selling enterprise," *id.* at 6, it aggregated the total extrapolated weight of the heroin seized by the Commonwealth on all three days and imposed the mandatory minimum sentence based on that amount.

Additionally, the trial court found that Appellant and Wilson were in "joint constructive possession" of the heroin inside of the Buick, reasoning that: "(1) both Mr. Wilson and [Appellant] were actively engaging in an ongoing criminal conspiracy to sell heroin, (2) the narcotics found in the vehicle were identically marked and packaged as the heroin that Officer Gramlich had purchased, and (3) Mr. Wilson had retrieved heroin from his vehicle before transferring it to [Appellant] to complete a drug sale." *Id.* at 6. The trial court further deemed Appellant's constructive possession of the heroin in the Buick to be established because he "had the ability and the intent to exercise control over the identically packaged heroin bundle in the Buick by completing drug transactions." *Id.* at 7. Thus, the trial court added the extrapolated weight of heroin Appellant sold to Officer Gramlich on July 6, 2004—687 milligrams—to the extrapolated weight of the heroin seized from the Buick pursuant to the execution of the search warrant—432 milligrams—to arrive at a total weight of "approximately 1.1 grams," and concluded that this particular weight of heroin, alone, was sufficient to justify the imposition of the mandatory minimum sentence for possession with intent to deliver. Trial Court Opinion at 6–7.[8]

**8.** At trial, the attorney for the Commonwealth claimed that the amount of heroin recovered on July 6, 2004 amounted to 1.043 grams. N.T. Trial, 2/15/05, at 68. Presently, the Commonwealth refers repeatedly in its brief to the weight of heroin listed in the police report—1.47 grams. *See* Commonwealth's Brief at 4, 8, 11, and 15. However, this police report was never entered into evidence at trial or at the sentencing

Appellant appealed to the Superior Court raising four claims: 1) the evidence was insufficient to sustain his conspiracy conviction; 2) the Commonwealth improperly extrapolated the weight of each bundle of heroin by weighing only one packet of the bundle; 3) the trial court committed error by combining the weights of the heroin involved in the transactions of June 16, June 30, and July 6, 2004; and 4) even considering only the events of July 6, 2004, he did not traffic one gram or more of heroin on that date since he did not jointly and constructively possess the drugs recovered from inside the Buick. A divided panel of the Superior Court affirmed Appellant's convictions in a published opinion. *Commonwealth v. Johnson*, 920 A.2d 873 (Pa.Super.2007). The majority opinion, authored by Judge Stevens and joined by Judge Panella, rejected all of Appellant's claims. The third member of the panel, Judge Klein, joined the majority opinion in all aspects except for the portion which held that the Commonwealth properly used extrapolation to establish the weight of heroin delivered, and, thus, he authored a lengthy dissent confined to that issue.

Relevant for purposes of this appeal, the panel considered Appellant's claim that, in determining whether to apply the mandatory minimum sentence required by 18 Pa.C.S.A. § 7508(a)(7)(i), the trial court improperly aggregated the weight of heroin sold during the June 16, June 30, and July 6 transactions between Officer Gramlich and Appellant. The panel took note of our Court's opinion in *Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807 (2000), which held that, because two drug transactions occurred ten days apart, required separate planning and execution, and were not contingent on one another, the transactions could not be treated as a

hearing. Rather, the trial court, in performing the above referenced extrapolation calculation on the total amount of heroin involved in the drug transactions of July 6, 2004 and seized from the Buick, which yielded a total estimated weight of 1.119 grams, relied on the weights of the individual packets as measured by the Philadelphia Police Crime Laboratory and listed on its reports. Thus, the trial court's 1.119 gram estimate is the only estimate based on the evidence introduced at trial and the sentencing hearing, and it is that amount which is at issue in this appeal.

single criminal act. Our Court determined, for purposes of imposing the mandatory minimum sentence under Section 7508, that the two transactions were properly deemed two separate crimes giving rise to two separate convictions. Based on this holding, the panel reasoned that the amount of drugs purchased by Officer Gramlich from Appellant in the three separate transactions could not be aggregated for sentencing purposes. Thus, the panel focused on the question of whether the extrapolated weight of the heroin seized on July 6, 2004, justified the imposition of the mandatory minimum sentence under Section 7508.

To answer this question, the panel addressed Appellant's challenge to the trial court's finding that he constructively possessed the heroin found in the search of the Buick after his arrest. The panel cited our Court's decision in *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992), which defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." The panel then set forth the following three factors to support its conclusion that appellant had the ability to control the heroin taken from the Buick during the search and the intent to exercise control over it:

First, Officer Gramlich arranged drug purchases on three different days, the last of which Appellant worked with Mr. Wilson to effect [sic] the second buy. Also, he was present within and obtained the drugs from the Buick in which a bundle of heroin marked "new era" was later recovered and matched the bundle Appellant sold to Officer Gramlich. Finally, Appellant clearly had the ability to obtain the drugs in the vehicle, as he was present in it and filled an order placed by Officer Gramlich from the quantity contained therein.

*Johnson*, 920 A.2d at 882.[9] The panel therefore concluded that adding the quantity of heroin seized from the Buick to the amount sold to Officer Gramlich met the weight requirement

9. As noted earlier in footnote 4, and as discussed further below, there is no evidence of record to indicate Appellant ever entered the Buick.

of 18 Pa.C.S.A. § 7508(a)(7)(i) for the imposition of the mandatory minimum sentence.

We granted allocatur to consider the following questions:

1.) Whether the Superior Court erred in determining that the expert extrapolation method was appropriate for determining the weight of a controlled substance where the extrapolated estimate of the amount of the controlled substance minimally exceeds the weight required to impose a mandatory sentence?

2.) Whether a person who sells packets of heroin, which were retrieved from an automobile parked on the street by a third party who was sitting in the automobile and who accepted money from the sale, may be deemed to have constructively possessed additional packets of heroin stored in the automobile found during a search conducted after his arrest?

*Commonwealth v. Johnson*, 602 Pa. 201, 979 A.2d 842, 843 (2009).

We presently need only consider whether the trial court properly determined that Appellant constructively possessed the second bundle of "new era" heroin seized from the Buick, such that its weight could be aggregated with the weight of the "check due" and "new era" heroin purchased by Officer Gramlich on July 6, 2004, in order to meet the one gram threshold for the imposition of the mandatory minimum term of incarceration under 18 Pa.C.S.A. § 7508(a)(7)(i).[10] We find this issue to be dispositive, and our resolution of it necessitates the vacation of Appellant's sentence and a remand for resentencing.

Appellant assails the trial court's finding that he constructively possessed the second bundle of "new era" heroin recovered from the Buick. He accepts that the tripartite legal

10. Since, as explained *infra*, we do not address the validity of the extrapolation method the trial court utilized to arrive at its estimate of the total weight of the heroin seized on July 6, 2004, we are accepting the trial court's calculation merely for purposes of discussion of this issue and do not, at present, express an opinion as to whether the extrapolation method utilized by the trial court was proper under the circumstances.

requirements for a finding, beyond a reasonable doubt, that a defendant constructively possessed an illegal substance, i.e., 1) the defendant's ability to exercise a conscious dominion over the illegal substance; 2) the defendant's power to control the illegal substance; and 3) the defendant's intent to exercise that control, were set forth in our Court's decision of *Valette*, *supra*, and were properly acknowledged by the Superior Court in its opinion below. However, he contends the evidence in this case satisfied none of these three requirements, and he cites two key aspects of that evidence as primary support for this contention.

First, Appellant avers the trial evidence showed he was never actually inside of the Buick, nor did he ever make any effort to enter it. Appellant notes that when he arrived at the place where the Buick was parked, Wilson got out of the Buick and talked to him on the street corner. After their initial conversation, Wilson went back to the Buick and secured the drugs, after which he transferred them to Appellant who was still standing on the street corner. This, Appellant suggests, shows that Wilson "made special efforts to keep [A]ppellant outside of, and away f[ro]m, his car and the drugs stored within it." Appellant's Brief at 35.

Second, Appellant argues the evidence adduced at trial established only the following sequence of events: After Officer Gramlich unexpectedly asked Appellant if he could buy a second bundle, Appellant "spontaneously contacted" Wilson by phone in order to obtain the second bundle of heroin; Wilson removed the bundle from the Buick and delivered it to Appellant; Appellant delivered the bundle to Officer Gramlich in exchange for cash; and Appellant returned to Wilson and paid him for the heroin. *Id.* at 35–36. Appellant cites the lack of any other trial evidence which would have established a relationship between himself and Wilson. He points out this was nothing more than "an arm[']s length drug transaction" between himself and Wilson, a drug source, and he asserts simply because he obtained a discrete quantity of drugs from Wilson, this act did not automatically render him in construc-

tive possession of any remaining drugs which Wilson possessed in the Buick. *Id.* at 36.

Appellant maintains that Wilson's efforts to keep him out of and away from the Buick in which the second bundle of heroin was stored, and the fact that he never tried to enter the Buick, nor had any physical means to do so, such as a key or remote unlocking device, demonstrated that he had neither the ability nor the power to control those particular drugs located inside the Buick. Appellant claims there is no evidence demonstrating he ever had any knowledge that there were other drugs situated in the Buick, and, thus, because of this lack of knowledge, he could not have had any intent to control those undelivered drugs. Appellant argues that the trial evidence demonstrated only that Wilson had "an exclusive ability to control his ... car and any drugs stored therein." *Id.* at 37. Appellant contends that a finding of constructive possession under these circumstances "stretches the notion of constructive possession beyond its breaking point." *Id.*

The Commonwealth responds by arguing that Appellant's claim is fundamentally misguided, and that it makes no difference whether he constructively possessed the second bundle of heroin found in the Buick, because Appellant was liable for that amount of heroin under a theory of conspiratorial liability. Commonwealth's Brief at 24.[11] The Commonwealth proffers it is well settled that a conspirator is criminally responsible for all acts of a co-conspirator "which are committed in furtherance of the common design," and the "natural and probable consequences" of those acts. *Id.* at 25 (quoting, *inter alia, Commonwealth v. Roux*, 465 Pa. 482, 490, 350 A.2d 867, 871 (1976) and *Commonwealth v. Eiland*, 450 Pa. 566, 570, 301 A.2d 651, 653 (1973)). The Commonwealth asserts the trial evidence in this matter established by a preponderance of the evidence, as required under Section 7508(b) and, also, beyond

11. Although the Commonwealth did not advance this theory in the proceedings in the lower courts, it contends that we may affirm the trial court on any basis, citing *Commonwealth v. Flanagan*, 578 Pa. 587, 611, 854 A.2d 489, 503 (2004) (recognizing principle that our Court "has the ability to affirm a valid judgment or order for any reason appearing as of record").

a reasonable doubt, that Appellant conspired with Wilson to distribute heroin, with Wilson's role in the conspiracy to be the supplier of the drugs. *Id.* The Commonwealth contends that "[n]othing could have been a more natural and probable byproduct of Wilson's role as a drug-supplier than that he would keep an extra stash of drugs in case [Appellant] were to bring him the welcome news that business was brisk and he needed a larger supply." *Id.* Thus, the Commonwealth concludes Appellant was automatically liable for Wilson's possession of the second bundle of heroin as he was his co-conspirator. According to the Commonwealth, "[s]ince [Appellant] was liable for the [second] bundle of heroin in Wilson's car under the doctrine of conspiratorial liability, there is no reason to consider whether he was liable for those drugs under a theory of constructive possession." *Id.* at 26.

The Commonwealth further argues that Wilson had both an ability and intent to control the bundle of heroin in the Buick since it was his vehicle, and he had just delivered a different bundle of heroin to Appellant from it. Hence, the Commonwealth asserts because Wilson's possession of the bundle of heroin in the Buick was attributable to Appellant as "a natural and probable consequence of their conspiratorial relationship ... he constructively possessed that bundle." *Id.* at 29. The Commonwealth therefore concludes that Appellant was fully liable for the bundle taken from the Buick under either the theory of conspiratorial liability or constructive possession and, therefore, Appellant correctly was sentenced by the trial court for possession of all the drugs seized on July 6, 2004.

In his reply brief filed with our Court, Appellant disputes that the trial evidence demonstrated the existence of a continuing criminal conspiracy between himself and Wilson to distribute heroin. To the contrary, Appellant maintains that this evidence showed only that the extent of the conspiracy between himself and Wilson was limited to the one bundle of heroin that he obtained from Wilson and then delivered to Officer Gramlich. In Appellant's view, the record does not contain any evidence to suggest a wider or ongoing conspiracy between himself and Wilson to effectuate the delivery of other

quantities of heroin beyond that involved in their lone transaction, nor, he suggests, did the Superior Court, in its opinion, find the existence of a wider conspiracy beyond that transaction. *See* Appellant's Reply Brief at 9–10.

Appellant further argues that this case "does not involve ... the general issue of a person's substantive liability for a criminal offense committed by a co-conspirator." *Id.* at 10. Rather, Appellant avers that this case involves the interpretation of the text of 18 Pa.C.S.A. § 7508, which he contends does not include for sentencing purposes quantities of drugs that are the object of a conspiracy conviction unless the defendant has manufactured them or actually or constructively possessed them with intent to deliver. He notes that 18 Pa.C.S.A. § 7508(a)(1) applies only when the defendant is convicted of violating Section 13(a)(30) of the Controlled Substances, Drug, Device, and Cosmetic Act, and that section prohibits the manufacture, delivery, or possession of heroin with intent to manufacture or deliver it. Appellant points out that Section 13(a)(30) does not, however, include either a conspiracy conviction or conspiratorial liability. Appellant references our Court's decision in *Commonwealth v. Hoke,* 599 Pa. 587, 962 A.2d 664 (2009), discussed at greater length *infra,* as support for his position. Appellant maintains that in *Hoke* we held that another mandatory sentencing statute, 35 P.S. § 780–113(k), did not apply to the crime of conspiracy to manufacture methamphetamine, as the statute, by its terms, restricted the imposition of the mandatory minimum sentence to only the crime of manufacturing methamphetamine. Appellant proffers that *Hoke* refutes the Commonwealth's argument of conspiratorial liability in the instant matter.

We begin our analysis by addressing the Commonwealth's claim that the quantity of heroin contained in the second bundle of heroin stored in the Buick could be imputed to Appellant under a theory of joint conspiratorial liability.[12]

12. It would appear from a careful reading of the trial court's opinion that its finding that there existed an ongoing conspiracy between Appellant and Wilson was not an independent basis for the imposition of the mandatory minimum sentence for Appellant's conviction of

First, to the extent that the Commonwealth is arguing that, when a defendant has been convicted of conspiracy to commit one of the offenses enumerated in § 7508(a)(7)(i), any amount of heroin which is in possession of a co-conspirator may be automatically imputed to the defendant for the purposes of imposing a mandatory minimum sentence, because of the conspiracy conviction, in and of itself, we are compelled to reject such argument, as the terms of this statutory provision do not allow such imputation.

Section 7508(a)(7)(i) provides, as follows:

(a) **General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

 * * *

(7) A person who is **convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is heroin** shall, upon conviction, be sentenced as set forth in this paragraph:

 (i) when the aggregate weight of the compound or mixture containing the heroin **involved** is at least 1.0 gram but less than 5.0 grams the sentence shall be a mandatory minimum term of two years in prison and a

possession with intent to deliver. Rather, this finding was one of three facts relied upon for its conclusion that Appellant was in constructive possession of the second bundle of heroin found in the Buick after Appellant had completed his transaction with Wilson, and he and Officer Gramlich left the vicinity. *See* Trial Court Opinion, 5/26/06, at 6; *supra* p. 9. Likewise, the Superior Court did not adopt a theory of joint conspiratorial liability as a basis for affirming the imposition of the mandatory minimum sentence. Consequently, the Commonwealth's contentions in this regard were not included in our original grant of allowance of appeal; however, as the Commonwealth suggests this as an alternate theory of affirmance, we will address whether the record supports the Commonwealth's theory both factually and legally. *See, e.g., Commonwealth v. Besch*, 544 Pa. 1, 3 n. 1, 674 A.2d 655 n. 1 (1996) (our responsibility as a reviewing court in criminal appeals "is to determine whether the record supports the factual findings of the lower court and the legitimacy of the inferences and legal conclusions drawn therefrom.").

fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: a mandatory minimum term of three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;

\* \* \*

18 Pa.C.S.A. § 7508(a)(7)(i) (emphasis supplied).[13]

In interpreting the language of this statute we are guided by the polestar principle that we must ascertain and effectuate the intent of the General Assembly in enacting it. *See* 1 Pa.C.S.A. § 1921(a). We are further guided by the Statutory Construction Act's command that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). As this is a penal statute, its words must be strictly construed, and any ambiguity in those words must be interpreted in favor of the Appellant. 1 Pa.C.S.A. § 1928(b)(1); *Commonwealth v. Jarowecki*, 604 Pa. 242, 249, 985 A.2d 955, 959 (2009).

■ Generally, the best indication of the General Assembly's intent in enacting a statute may be found in its plain language. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). We therefore construe statutory language according to its "common and approved usage," unless particular words and phrases have "acquired a 'peculiar and appropriate meaning.'" *Jarowecki*, 604 Pa. at 249, 985 A.2d at 959 (quoting *Commonwealth v. McClintic*, 589 Pa. 465, 472, 909 A.2d 1241,

---

**13.** Section 7508(b) of the Crimes Code further provides in relevant part:
Provisions of this section shall not be an element of the crime.... The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.
18 Pa.C.S.A. § 7508(b).

1245 (2006) and 1 Pa.C.S.A. § 1903(a)). In this regard, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (internal quotations omitted); *see also Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) ("[A] court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.").

Accordingly, applying these principles, and giving the words of 18 Pa.C.S.A. § 7508(a)(7)(i) their plain and ordinary meaning, a mandatory minimum sentence may be imposed on a defendant under this statutory provision only if he or she has been "convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act" and the amount of heroin involved in the commission of those specifically enumerated offenses exceeds one gram and is less than five grams. The subsections of Section 13(a) of the Controlled Substance, Drug, Device and Cosmetic Act listed in 18 Pa.C.S. § 7508(a)(7)(i) specifically prohibit:

(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering

or possessing with intent to deliver, a counterfeit controlled substance.

\* \* \*

(37) The possession by any person, other than a registrant, of more than thirty doses labeled as a dispensed prescription or more than three trade packages of any anabolic steroids listed in section 4(3)(vii).

35 P.S. § 780–113(a)(14), (30), and (37). Nowhere in this list of crimes to which the minimum sentence applies upon conviction, however, did the legislature include conspiracy.

 It is an established principle of law that, under the Crimes Code of our Commonwealth, conspiracy to commit a substantive offense, and the substantive offense itself which is the object of the conspiracy, are two entirely separate crimes. *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976); *see also Commonwealth v. Rios*, 546 Pa. 271, 283, 684 A.2d 1025, 1030 (1996) ("A defendant may be convicted of both conspiracy and the offense that was the object of the conspiracy.") Consequently, when the legislature omits the crime of conspiracy from a mandatory minimum sentencing statute, we must view this as a deliberate choice by the legislature not to apply the sentencing enhancement to a conspiracy conviction for the substantive offense or offenses set forth in that statute. It is presumed the legislature is cognizant of the distinction in the law between the inchoate crime of conspiracy and substantive criminal offenses, and, thus, if the legislature intends a mandatory minimum sentencing statute to apply to the crime of conspiracy, this intention will be reflected by the express language of the statute. 1 Pa.C.S.A. § 1921(b).

As Appellant has suggested, our Court's decision in *Commonwealth v. Hoke*, 599 Pa. 587, 591–92, 962 A.2d 664, 666–67 (2009), is particularly instructive on this point. In that case, our Court considered the question of whether an individual's conviction for conspiracy to manufacture methamphetamine authorized the imposition of a mandatory minimum sentence under 35 P.S. § 780–113(k), which requires a trial court to impose such a sentence on "any person convicted of manufac-

ture of ... methamphetamine." *Hoke*, 599 Pa. at 591, 962 A.2d at 666 (quoting 35 P.S. § 780–113(k)). Inasmuch as Section 780–113(k) is a penal statute, we noted its language must be strictly and narrowly construed. In this regard, we observed the plain language of this statutory provision required the imposition of a mandatory minimum sentence only when a defendant was convicted of the manufacture of certain specified controlled substances, which included methamphetamine, but it did not mention the crime of conspiracy. We reasoned that conspiracy to manufacture a controlled substance and the crime of manufacturing a controlled substance are two entirely separate crimes, and, due to the fact the plain language of Section 780–113(k) encompassed only the crime of manufacture but not conspiracy to manufacture, this section was inapplicable to the defendant's conspiracy conviction. *Hoke*, 599 Pa. at 591–92, 962 A.2d at 667.

In addition, we specifically rejected the notion that the legislature always intends for a mandatory minimum sentencing statute to apply to both inchoate and substantive crimes, even if the inchoate crime is not specifically incorporated into the statute. Our Court recognized that the legislature has explicitly included conspiracy and other inchoate crimes in other mandatory minimum sentencing statutes such as 42 Pa.C.S.A. § 9714 (requiring a mandatory sentence for convictions of second and subsequent "crimes of violence," which the statute defines as certain specified substantive offenses and, also, "criminal attempt, criminal conspiracy or criminal solicitation" to commit such offenses), 42 Pa.C.S.A. § 9712 (requiring a mandatory sentence for a crime of violence committed with a firearm), and 42 Pa.C.S.A. § 9713 (requiring a mandatory sentence for a crime of violence committed on public transportation). We deemed these inclusions to be a reflection of the legislature's awareness of the difference between inchoate and substantive crimes, as well as its ability to make inchoate crimes subject to the same mandatory minimum sentences applicable to the underlying crimes—if it so desired. *Hoke*, 599 Pa. at 595, 962 A.2d at 668–69.

■ Likewise, in the case *sub judice,* the legislature did not choose to include the offense of conspiracy in the list of enumerated criminal offenses to which 18 Pa.C.S.A. § 7508(a)(7)(i) applies upon conviction. Because this is a penal statute which we must strictly construe, we will not rewrite it to add the offense of conspiracy to its unambiguous provisions. Thus, the explicit terms of 18 Pa.C.S.A. § 7508(a)(7)(i) did not authorize the trial court to impose a mandatory sentence on Appellant for the second bundle of heroin stored in Wilson's Buick as the result of Appellant's conviction of criminal conspiracy.

We next address the Commonwealth's theory of conspiratorial culpability, and alternate basis for affirmance, insofar as it is premised on the assertion that there existed an ongoing conspiracy between Appellant and Wilson to sell heroin which encompassed as its object the second bundle of heroin Wilson had stored in his automobile, such that Appellant was guilty, by virtue of participation in that conspiracy, of possession with intent to deliver that bundle of heroin—an offense which is listed in 18 Pa.C.S.A. § 7508(a)(7)(i). We also reject this contention, as the trial court's finding that there existed an ongoing conspiracy between Appellant and Wilson to sell heroin at the time of the seizure of the second bundle of heroin from Wilson's automobile is belied by the evidence of record.

■ As our Court has long recognized: "The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members." *Commonwealth v. Evans,* 489 Pa. 85, 92, 413 A.2d 1025, 1028 (1980) (quoting *Commonwealth v. Pass,* 468 Pa. 36, 45, 360 A.2d 167, 171 (1976)). The facts adduced at trial, and recited above, did not establish the existence of any continuing criminal conspiracy between Appellant and Wilson to sell additional quantities of heroin beyond that involved in the single transaction on July 6, 2004. In that transaction, Appellant called Wilson to make the arrangements, received a single bundle of heroin from Wilson, immediately delivered it to Officer Gramlich, and then re-

turned money to Wilson. The record, however, is devoid of evidence to suggest any agreement between Appellant and Wilson to deliver quantities of heroin other than that which was the subject of this lone exchange. Officer Gramlich, the sole witness in this regard, observed no prior or subsequent transactions between Appellant and Wilson indicative of their participation in an ongoing criminal enterprise, nor did he offer any testimony which would establish that Appellant and Wilson agreed to deliver the heroin in the Buick at a future point or shared a criminal intent to possess the second bundle of heroin secreted in the Buick for purposes of its future delivery.

To the contrary, the evidence furnished by Officer Gramlich's testimony regarding his observations during his investigation suggests that Appellant was a "freelance" middleman who worked for, or with, no one person in particular, but would, instead, obtain heroin for buyers from whatever source was most convenient and available at the time a buyer's request was made. Indeed, Wilson was the third separate supplier from whom Appellant obtained drugs to fulfill Officer Gramlich's buy requests. For taking the bundle of heroin from Wilson, delivering it to Officer Gramlich, and then conveying to Wilson the purchase money, Appellant was properly convicted of the offense of conspiracy to deliver a controlled substance, for which he was charged. *See supra* note 5 (recounting that criminal information charged Appellant with the offense of conspiracy and listed delivery of controlled substance as the object of that conspiracy); *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228 (2004) (finding evidence sufficient to uphold defendant's conspiracy to deliver heroin conviction for facilitating a transaction between an undercover police officer and a second individual). However, there is nothing in the evidence to support a conclusion that the conspiracy between Appellant and Wilson continued after Appellant delivered that bundle to Officer Gramlich. *See* 18 Pa.C.S.A. § 903(g)(1) ("[C]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be

committed is abandoned by the defendant and by those with whom he conspired."); *Commonwealth v. Tate,* 485 Pa. 180, 184, 401 A.2d 353, 355 (1979) (same). There is no evidence of record to support the trial court's finding of an "ongoing" conspiracy between Appellant and Wilson to sell additional heroin, and, as discussed at greater length *infra,* no evidence to suggest that Appellant even knew the second bundle of heroin was stored in the Buick. Therefore, there exists insufficient evidentiary support for a conclusion that the offense of possession with intent to deliver that heroin, for which Wilson was arguably culpable, could be imputed to Appellant under the theory of conspiratorial liability.

The Superior Court cases cited by the Commonwealth are inapposite. In *Commonwealth v. Holt,* 711 A.2d 1011 (Pa.Super.1998), the Superior Court was not considering the imposition of a mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(7)(i), but, rather, was addressing the question of whether a defendant was properly convicted of the offense of possession with intent to deliver, where the evidence **established** the existence of a conspiracy between himself and another individual to possess with intent to deliver a quantity of cocaine stored in a travel bag. The court held, under these circumstances, that the defendant properly was convicted of possession with intent to deliver, reasoning that this conviction "stemmed from his conviction for criminal conspiracy." 711 A.2d at 1017. The court noted: "when the [defendant] was convicted of conspiracy to possess with intent to deliver the [cocaine] in the ... bag, he is also culpable for the crime itself, that is possession with intent to deliver cocaine." *Id.* This is in accordance with the general principles of criminal culpability discussed in *Roux, supra.* Similarly, in *Commonwealth v. Perez,* 931 A.2d 703 (Pa.Super.2007), unlike the instant matter, the evidence of record showed the defendant was actively engaged in an ongoing conspiracy with another individual to distribute heroin at the time of his arrest, and the crimes for which he was charged, including possession with intent to deliver, all arose from that conspiracy.

██ By contrast, as discussed above, the evidence in the case *sub judice* did not prove any conspiracy between Appellant and Wilson which extended beyond their lone transaction. Consequently, the second bundle of heroin in the Buick could not, therefore, under a theory of conspiratorial culpability, form the basis of Appellant's possession with intent to deliver conviction. Accordingly, the trial court could not, on that basis, consider the weight of the second bundle in imposing the mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(7)(i).

██ We turn now to the question of whether the lower courts properly determined Appellant to be in constructive possession of the bundle of heroin in the Buick. As our Court has noted: "[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). The existence of constructive possession of a controlled substance is demonstrated by "the ability to exercise a conscious dominion over the illegal substance: the power to control the [illegal substance] and the intent to exercise that control." *Valette*, 531 Pa. at 388, 613 A.2d at 550 (quoting *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983)). An "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." *Macolino*, 503 Pa. at 206, 469 A.2d at 134. Thus, circumstantial evidence may be used to establish constructive possession of the illegal substance. *Id.* Additionally, our Court has recognized that "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Valette*, 531 Pa. at 388, 613 A.2d at 550.[14]

14. *Valette, Mudrick* and *Macolino* all considered the question of whether the trial evidence was sufficient to convict the defendants of the substantive offenses of possession, or possession with intent to deliver, controlled substances found in an area in which the defendant shared joint access and control with another, based on the doctrine of constructive possession of the controlled substance. In those cases, we articulated the standard of review for the trial court's finding that the defendant constructively possessed the controlled substance to be whether the Commonwealth had proven constructive possession be-

■ The evidence adduced in this matter at trial and the sentencing hearing, evaluated in accordance with our traditional principles of sufficiency review, does not support, beyond a reasonable doubt, the trial court's finding that Appellant was in constructive possession with Wilson of the bundle of heroin in the Buick. This evidence as supplied by Officer Gramlich's testimony, even when viewed in a light most favorable to the Commonwealth, including all reasonable inferences therefrom, showed only that: Appellant phoned Wilson to request a single bundle of heroin. When Appellant arrived with Officer Gramlich at Wilson's location, Appellant exited Gramlich's car and had a conversation with Wilson, which occurred on a public street corner. After engaging in this conversation, Wilson returned to the Buick while Appellant remained standing on the street corner. Appellant did not accompany Wilson to the Buick. While Appellant was standing on the street corner, Wilson entered the Buick, retrieved the bundle of heroin from the glove box area, and returned to where Appellant was standing on the street corner. After Appellant obtained the money from Officer Gramlich, he delivered that money and other money in his pocket to Wilson, again remaining outside of the Buick. Later, when Wilson was arrested, he was discovered with the keys to the Buick in his pocket.

Importantly, there was no proof presented at trial that Appellant had any connection to the Buick whatsoever as no evidence of any ownership interest by him in the Buick was introduced, and he was never observed in or near the Buick, at any time before or after Wilson's entry.[15] Likewise, there was no evidence brought forward at trial to show that Appellant had any ability to enter into the Buick's passenger compart-

yond a reasonable doubt. Thus, we will view all of the evidence received by the trial court in the instant matter on this question in the light most favorable to the Commonwealth under that standard and draw all reasonable inferences from that evidence which are favorable to the Commonwealth. *Valette,* 531 Pa. at 388, 613 A.2d at 549.

15. Since, as discussed, *supra,* the Superior Court's finding that "Appellant was present within and obtained the drugs from the Buick," *Johnson,* 920 A.2d at 882, is unsupported by the record, we will discount it in our analysis.

ment or trunk if he so desired. Appellant had his own vehicle, and it was only Wilson who had a set of keys for the Buick. Further, no evidence was offered to indicate Appellant had any other means of access to the Buick via a separate key or a remote entry device. Consequently, the totality of the evidence simply did not establish the *sine qua non* for the trial court's finding that Appellant was in joint constructive possession with Wilson of the second bundle of "new era" heroin stored inside the Buick, since the evidence did not demonstrate that Appellant had joint control over, and equal access to, the Buick with Wilson, nor did it support an inference that Appellant had any ability to exercise conscious dominion over the bundle of heroin in the Buick, or any power or intent to control it. *Valette, Mudrick, Macolino, supra.*

As we have determined the trial court erroneously concluded that Appellant constructively possessed with intent to deliver the second bundle of "new era" heroin recovered from Wilson's Buick pursuant to a search warrant, and as we discern inadequate record support for the Commonwealth's alternate theory that this second bundle could be imputed to Appellant as the result of conspiratorial liability, we conclude that the trial court therefore improperly included the second bundle's weight in its determination that Appellant was subject to the mandatory minimum sentence of incarceration required by 18 Pa.C.S.A. § 7508(a)(7)(i). Consequently, as the weight of the heroin involved in the two sales to Officer Gramlich on July 6, 2004 does not meet the one gram threshold for the imposition of the mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(7)(i) for the offense of possession with intent to deliver, we vacate Appellant's sentence and remand this matter for resentencing.[16] The Superior Court's order affirming Appellant's sentence is hereby vacated, and this case is remanded to the Superior Court to remand to the

16. Again, because of this disposition we need not address Appellant's challenge to the extrapolation method utilized by the trial court, since, even under the trial court's final determination of the weight of heroin obtained using this method, Appellant would not be subject to the imposition of the mandatory sentence for his convictions.

Court of Common Pleas of Philadelphia for resentencing in accord with this opinion.

Order reversed. Case remanded for resentencing. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER and ORIE MELVIN join the opinion.

Justice EAKIN files a concurring opinion in which Justice ORIE MELVIN joins.

Justice McCAFFERY files a dissenting opinion.

Justice EAKIN, concurring.

I concur with the majority's holding insofar as it applies to the facts of this case, but write separately to acknowledge the dissent's statement of conspiracy law. We granted allowance of appeal to answer the following question:

> [W]hether a person who sells packets of heroin, which were retrieved from an automobile parked on the street by a third party who was sitting in the automobile and who accepted money from the sale, may be deemed to have constructively possessed additional packets of heroin stored in the automobile found during a search conducted after his arrest?

*Commonwealth v. Johnson,* 602 Pa. 201, 979 A.2d 842, 842–43 (2009) (table). The simple answer is yes—a person who sells packets of heroin may constructively possess additional packets of heroin stored in a co-conspirator's automobile. However, a defendant's constructive possession of a co-conspirator's drugs still must be proven; in this case, I agree with the majority that it was not.

Nonetheless, the dissent correctly recites well-settled statements of law in concluding that heroin found in a co-conspirator's possession may be attributable to the defendant as a result of conspiratorial liability. Dissenting Op., at 411–14, 26 A.3d at 1096–98 (citations omitted). Here, the evidence proves a conspiracy between appellant and Wilson to sell the drugs delivered to the officer. However, the evidence is

insufficient to establish the conspiracy extended to the additional heroin stored in Wilson's Buick for the reasons set forth by the majority. *See* Majority Op., at 405–10, 26 A.3d at 1092–95.

One can be a conspirator with a supplier in different capacities: as the supplier's source, as a partner, as a middleman, or as a customer. However, as a customer or middleman one does not constructively possess all that the supplier has, absent additional evidence establishing that connection. Appellant shopped at Wilson's store, but that does not mean he possessed all Wilson's stock in trade. Accordingly, I concur with the majority vacating the imposition of the mandatory minimum sentence under 18 Pa.C.S. § 7508(a)(7)(i).

Justice ORIE MELVIN joins this opinion.

Justice McCAFFERY, dissenting.

Because I would conclude, under basic conspiracy law principles, that the heroin attributable to Appellant includes not only the amount that he sold to the undercover officer but also the amount recovered from his co-conspirator's car, I must respectfully dissent.

"[N]o principle of law is more firmly established than that when two or more persons conspire or combine with one another[ ] to commit an unlawful act, each is criminally responsible for the acts of his associate or confederate committed in furtherance of the common design." *Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867, 871–72 (1976) (citation omitted); *see also Pinkerton v. U.S.,* 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (holding that the acts of one conspirator in furtherance of the conspiracy that are reasonably foreseeable as a necessary or natural consequence of the unlawful agreement are attributable to the co-conspirators "for the purpose of holding them responsible for the substantive offense"); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651, 653 (1973) ("[T]he law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or

purpose of the conspiracy."); *Commonwealth v. Thomas,* 410 Pa. 160, 189 A.2d 255, 258 (1963) ("There can be no question of the legal responsibility of the accomplice for the act committed by his coconspirators while the crime agreed upon is in the course of preparation, for he is criminally liable for the natural consequences of the acts of his fellows under such circumstances."). Courts of this Commonwealth, as well as the federal courts, have repeatedly invoked this general principle to attribute the illegal narcotics that are in the possession of one conspirator to all members of the conspiracy.

In *Commonwealth v. Perez,* 931 A.2d 703 (Pa.Super.2007), an undercover police officer observed the appellant sell heroin to three individuals within approximately one-half hour while standing in front of the home of one Arthur Maddox. At one point during the heroin sales, Mr. Maddox exited his home, handed the appellant more packets of heroin, accepted money from the appellant, and then sat in a parked vehicle in front of his home, watching the appellant. After the third sale, the appellant handed Mr. Maddox more money and the heroin packets. *Id.* at 705–06, 709. The appellant and Mr. Maddox were both arrested shortly thereafter. A post-arrest search of Mr. Maddox's home yielded more packets of heroin, marked identically to those that had been sold by the appellant. *Id.* at 706. The appellant was convicted of possession with intent to deliver a controlled substance and criminal conspiracy. To calculate the total amount of heroin attributable to the appellant for sentencing purposes, the trial court added together the amount sold by the appellant during the observed buys, and the amount recovered from the home of Mr. Maddox, his co-conspirator. Because this total was more than one gram, the trial court imposed a mandatory minimum sentence pursuant to 18 Pa.C.S. § 7508. *Perez, supra* at 706 & n. 5.

The appellant challenged the trial court's imposition of a mandatory minimum sentence, arguing that the heroin found in his co-conspirator's home should not have been attributed to him. The Superior Court denied relief, reasoning as follows:

Because the Commonwealth proved conspiracy, it did not have to prove [the appellant's] constructive possession of the

drugs found in [his co-conspirator's] home. As a result of the conspiracy, the drugs in the home were fully attributable to [the appellant] as well as [to his co-conspirator]. *Id.* at 709.

The Superior Court reached a similar result nearly ten years earlier in *Commonwealth v. Holt*, 711 A.2d 1011 (Pa.Super.1998), a case in which the appellant was convicted of, *inter alia*, possession with intent to deliver cocaine and criminal conspiracy. On appeal, the appellant challenged, *inter alia*, his conviction for possession with intent to deliver cocaine, arguing that because the arresting officers had found all the cocaine in his co-conspirator's travel bag, and thus presumably in his co-conspirator's possession, the evidence was not sufficient to show that the cocaine was in the appellant's possession. The Superior Court denied relief, explaining as follows: "when the appellant was convicted of conspiracy to possess with intent to deliver [the cocaine recovered in his co-conspirator's travel] bag, he is also culpable for the crime itself, [*i.e.*,] possession with intent to deliver cocaine." *Id.* at 1017.

In cases similar to *Perez* and *Holt*, the federal courts have reasoned similarly. *See, e.g., United States v. Payne*, 591 F.3d 46, 70 (2d Cir.2010) (concluding that the defendant-appellant "was accountable for 'all reasonably foreseeable quantities' of crack distributed by the conspiracy of which he was a member") (citation omitted); *United States v. Garcia*, 655 F.2d 59, 63 (5th Cir.1981) (concluding that "since the participants in the conspiracy ... apparently possessed the drug, Garcia, as a co[-]conspirator, will be considered to have had it also" and that a co-conspirator "assumed responsibility for the [cocaine] possession by his co[-]participants by joining the conspiracy").

I believe that these decisions from our Superior Court and the federal circuit courts are instructive and persuasive here. In fact, the circumstances of the instant case are very similar to those in *Perez, supra.*

As the majority summarizes, Appellant and his co-conspirator, William Wilson, collaborated in the sale of a bundle of heroin to an undercover officer on July 6, 2004. Specifically,

after the officer requested a second bundle of heroin from Appellant that day, Appellant made a phone call and then directed the officer to drive to a particular location, where Appellant met Mr. Wilson, who was sitting in a gold Buick. Appellant and Mr. Wilson shook hands and briefly conversed; Mr. Wilson gave Appellant 13 packets of heroin from the Buick; Appellant gave the packets to the officer in exchange for $120; Appellant then gave Mr. Wilson the $120 as well as some other money; and the two men shook hands again. Appellant and Wilson were arrested shortly thereafter, and a post-arrest search of the gold Buick revealed 12 additional packets of heroin therein.

These facts are obviously similar to those of *Perez, supra,* where the appellant made three sales of heroin in front of the home of his co-conspirator, who retrieved more heroin from the home to give to the appellant to sell. As discussed above, the Superior Court held there that heroin found in the co-conspirator's home was attributable to the appellant simply by reason of the conspiracy. I believe the same legal principle should apply here, with the result that the heroin found in Mr. Wilson's car is attributable to Appellant as a co-conspirator. Accordingly, I would conclude that if the sum of the heroin sold by Appellant and the heroin found in his co-conspirator's car was at least one gram, then the trial court properly imposed a mandatory minimum sentence for possession with intent to deliver heroin pursuant to 18 Pa.C.S. § 7508(a)(7)(i).

While acknowledging the above principles, the majority declines to apply them here because it concludes that the facts adduced at trial "did not establish the existence of any **continuing** criminal conspiracy between Appellant and Wilson to sell additional quantities of heroin beyond that involved in the single transaction on July 6, 2004," *i.e.,* the purchase by the undercover officer. Majority Opinion (Todd, J.), Op. 404, 26 A.3d at 1092 (emphasis added). The majority finds "nothing in the evidence to support a conclusion that the conspiracy between Appellant and Wilson continued after Appellant delivered that [heroin] bundle to [the officer]." *Id.* at 405, 26 A.3d at 1092–93. In the majority's view, the evidence suggests that

"Appellant was a 'freelance' middleman who worked for, or with, no one person in particular, but would, instead, obtain heroin for buyers from whatever source was most convenient and available at the time a buyer's request was made." *Id.* Respectfully, I am unable to agree with the majority's interpretation of the evidence and its narrowing of the scope of the criminal conspiracy to a single drug sale. In my view, the majority has failed to acknowledge the significance of evidence supporting a broader conspiracy, and thus has not credited the trial court's finding that Appellant and Mr. Wilson "were actively engaging in an ongoing criminal conspiracy to sell heroin." Trial Court Opinion, filed 5/26/06, at 6.

The evidence from which I believe one can infer a broader conspiracy can be summarized as follows. The undercover officer had purchased heroin from Appellant on three different days by calling his cell phone number and arranging a pickup, which was always, at Appellant's direction, on the corner of Seventh Street and Girard Avenue in Philadelphia. On July 6, 2004, the day of the last purchase, when the undercover officer asked Appellant for yet another bundle of heroin, Appellant immediately made a phone call to request it; he then re-entered the officer's car, and directed him to drive a couple of blocks to where Mr. Wilson was waiting in his parked car. After Appellant and Mr. Wilson spoke briefly on the street corner and shook hands, the latter returned to his car to get a bundle of heroin from the glove compartment. Mr. Wilson gave the heroin to Appellant, who in turn gave it to the officer in exchange for $120 in pre-recorded buy money. Appellant then gave the buy money, as well as additional money from his pocket, to Mr. Wilson. Majority Opinion, at 386–87, 26 A.3d at 1081–82; Trial Court Opinion at 1–2.

Thus, one can conclude that Appellant was in the business of selling heroin on a particular street corner. One can also reasonably infer that Mr. Wilson was working his drug trade in the same neighborhood as Appellant, because he was waiting in his parked car, with heroin packets, when Appellant and the officer arrived from only a couple of blocks away right after Appellant made the phone call to obtain the heroin.

When the officer made his additional and unexpected request of Appellant for more heroin on the day in question, Appellant was immediately able to make contact with Mr. Wilson and to obtain from him the heroin sought by the officer. Tellingly, at the end of the transaction, Appellant gave Mr. Wilson **more** than the $120 paid by the officer for the heroin packets just purchased; Appellant also took other money from his pocket and gave that to Mr. Wilson as well.

From these circumstances, I cannot conclude, as does the majority, that the interaction between Appellant and Mr. Wilson was nothing more than a single drug transaction. Appellant may very well have been, as the majority characterizes him, a freelance middleman who obtained heroin for buyers from not just Mr. Wilson, but from whatever source was convenient and available. *See* Majority Opinion, at 405–06, 26 A.3d at 1092–93. But this *modus operandi* is certainly not incompatible with the existence of one or more ongoing conspiratorial relationships. In fact, a "retailer" of heroin who serves as a middleman between the ultimate consumers and a number of different sources would appear likely to be engaged in numerous conspiracies to sell heroin. In my view, the above evidence supports the trial court's conclusion that Appellant and Mr. Wilson were actively engaged in an ongoing criminal conspiracy to sell heroin. Accordingly, because a conspirator is legally responsible for any acts committed by his fellow co-conspirator to further the purpose of the conspiracy, including those acts committed in the course of preparation for the crime agreed upon, *see Roux,* 350 A.2d at 871–72; *Eiland,* 301 A.2d at 653; *Thomas,* 189 A.2d at 258, I would conclude that the heroin found in Mr. Wilson's car was attributable to Appellant as a co-conspirator. It is eminently foreseeable as a natural consequence of an unlawful agreement to sell heroin that a co-conspirator would remain in the vicinity of the distribution site, equipped with heroin packets in his parked vehicle. Mr. Wilson did just that. Appellant, as his co-conspirator, should be criminally liable for the heroin found in Mr. Wilson's car.