J-S18039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EID ALRASHEEDI | : | |
| | : | |
| Appellant | : | No. 938 MDA 2018 |

Appeal from the Judgement of Sentence May 9, 2018
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0005997-2017

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 24, 2019**

Appellant, Eid Alrasheedi, appeals from the judgment of sentence entered in the Court of Common Pleas of Lancaster County, which, sitting as finder of fact in his bench trial, found him guilty on one count of Possession with Intent to Deliver Heroin ("PWID"), 35 P.S. § 780-113(a)(30), and one count of possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Sentenced to 204 days to 23 months' incarceration on the PWID conviction, with one year of concurrent probation for possession, Appellant challenges the sufficiency of evidence offered to prove he possessed the heroin in question. We affirm.

At Appellant's criminal trial, the Commonwealth presented the testimony of Officers J. Hatfield and Jason Hagy to prove the charge of PWID. Specifically, Officer Hatfield, a police officer with 13 years of narcotics investigations experience while serving the City of Lancaster, testified he was

_____
* Former Justice specially assigned to the Superior Court.

driving a marked patrol vehicle through a high-crime area, known for heroin trafficking and daily overdoses, at approximately 10:55 p.m. or 11:00 p.m. At this time, with the aid of streetlights and activation of the patrol car's high-beams, Officer Hatfield clearly observed a male on a bike and Appellant extending their hands toward one another, with one palm down and one palm up, as in the act of making a hand-to-hand exchange. N.T. 5/9/18, at 7-10. The positioning of hands was different than a handshake. N.T. at 11. When the male on the bike made eye contact with Officer Hatfield, however, he rode his bike across the street and away from the area. N.T. at 10. No one else was on the block at the time. N.T. at 11.

Appellant, meanwhile, went across the street and ducked behind the sidewalk side of a white pickup truck with a large floor model flat-screen TV in the back. N.T. at 11. Officer Hatfield remained in the patrol car, and he observed Appellant "peeking out like this, [demonstrating], like looking to see where I – what I was doing, if I was going to keep moving. And I actually observed him when he poked his head out the one time and engaged in a mere encounter with him." N.T. at 12.

Officer Hatfield addressed Appellant with, "Hey, Bud, do you live in this area?" Appellant answered "yeah," to which Officer Hatfield asked, "Where in this area do you live?" Appellant would not give an exact address, but kept saying "back here," without turning toward the houses behind him or using his hands to point that way. N.T. at 13. It occurred to Officer Hatfield at this time that Appellant would not pull his hands out from behind the pick-up truck.

N.T. at 13. Officer Hatfield also noticed Appellant spit onto the ground and periodically look down into the storm drain or gutter, "as if he was, like, keeping an eye on something." N.T. at 14, 23.

As soon as Officer Hatfield opened the driver's side door, Appellant ran to one of the residences and started pounding on the front door "real hard, screaming for them to let him in." N.T. at 13-14. Officer Hatfield called for back-up units and asked Appellant to have a seat on the steps of the residence. N.T. at 14. As Officer Hatfield now looked towards the pick-up truck from the sidewalk side, he could see a clear sandwich bag lying in the gutter next to a spot of saliva on the sidewalk. N.T. at 15. The bag contained two bundles of heroin. N.T. at 15. Less than a foot away, moreover, was a third bundle of heroin. N.T. at 15. It was Officer Hatfield's experience that it would be uncommon for someone to just leave three bundles of heroin in the gutter in this neighborhood, as the bags "wouldn't have lasted very long down there." N.T. at 18.

At that point, Officer Hatfield arrested Appellant for suspicion of PWID and possession. N.T. at 16. A search incident to arrest disclosed a game cigarette wrap commonly used for smoking marijuana, $67 in U.S. currency, no paraphernalia for personal heroin use, and two cell phones. N.T. at 16.

Officer Jason Hagy provided expert testimony that a typical heroin use arrested for personal possession has around three baggies of heroin. N.T. at 46. A street-level heroin dealer, on the other hand, typically has "five bundles, six bundles, sometimes ten bundles; and if they're in the middle of selling,

- 3 -

you know, two-plus bundles[,]" Hagy testified. N.T. at 50. Each bundle contains ten to 15 baggies. N.T. at 48.

In the present case, the three bundles recovered contained a total of 28 baggies of heroin, which had a street value of around $280 to $300. N.T. at 50. In Officer Hagy's experience, heroin users in Lancaster County do not typically buy heroin in bundles, unless several addicts pool their money. N.T. at 50. "A bundle of heroin – I wouldn't be surprised for a user to buy a bundle of heroin but not multiple bundles of heroin at one time. I would say that's rare[,]" he opined. N.T. at 52.

Officer Hagy also drew a distinction between Lancaster City heroin users and heroin street-dealers with respect to cell phone possession. In the officer's experience, it is "rare" for a heroin user to possess multiple cell phones. "Sometimes they don't even have a phone. I would be surprised if they have multiple phones[,]" the officer testified. N.T. at 52. In contrast, it is "extremely common" for heroin dealers to have multiple phones, the officer explained. In this scenario, one phone has a data plan assigned to the person's name, while the other is a prepaid phone with a number connected to no one, "so that when you give this number out to random people, you know, if they were to get arrested or law enforcement were to get ahold of this phone number, they can't just run it through some sort of a database and it comes back to a name." N.T. at 52. The dealer can then easily change his number and disperse it to those with whom he is dealing. N.T. at 53.

Officer Hagy viewed the evidence in the present case against his experiences and concluded that Appellant possessed the heroin bundles with the intent to deliver. Specifically, Appellant's possession of two cell phones, the packaging of the heroin, his statements during his prison call expressing frustration with Officer Hatfield's presence when they were waiting for a customer, *see* N.T. at 55, and the lack of heroin use paraphernalia on his person all supported the officer's opinion, he testified. N.T. at 52-57.

As noted above, Appellant's non-jury trial resulted in convictions on both counts. Appellant was convicted at a non-jury trial on May 9, 2018, and received sentence on that same date. He filed a notice of appeal on June 7, 2018.[1]

_____

[1] Upon review of Appellant's docketing statement and the trial court docket, no judgment of sentence appeared to have been imposed yet, and neither the notice of appeal nor the docketing statement had a copy of the sentencing order attached. Accordingly, by order of June 18, 2018, this Court directed Appellant to show cause why the appeal should not be quashed as interlocutory. *See Pa.R.A.P. 341(b)*; *Commonwealth v. Harper*, 890 A.2d 1078 (Pa. Super. 2006) (in criminal case, final order is judgment of sentence).

Appellant's counsel filed a response on June 20, 2018, indicating that he did not represent Appellant at trial and mistakenly believed that Appellant had already been sentenced. Counsel stated that he contacted the trial court, and a sentencing date had been scheduled; therefore, he would be withdrawing the instant appeal.

However, on July 10, 2018, counsel filed an amended response, indicating that Appellant had been sentenced on May 9, 2018, the date of his conviction, but the sentencing order had not been docketed. The omission having been rectified by the trial court, counsel attached a copy of the updated trial court docket showing that sentence was imposed on May 9, 2018. This Court has independently verified the entry of the May 9, 2018 judgment of sentence on

In his appeal, Appellant raises the following issue for our review:

Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that Mr. Alrasheedi was guilty of possession with intent to deliver heroin where there was no direct evidence that Mr. Alrasheedi possessed any drugs?

Appellant's brief, at 4.

"A claim challenging the sufficiency of the evidence is a question of law."

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). The standard and scope of review applicable to a challenge to the sufficiency of the evidence is well-settled:

[O]ur standard of review is *de novo* and our scope of review is plenary. In assessing Appellant's sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact–finder to find every element of the crime beyond a reasonable doubt. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.

*Commonwealth v. Hutchison*, 164 A.3d 494, 497 (Pa. Super. 2017) (internal citations, quotation marks, and brackets omitted).

Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted). In conducting this review, the appellate court may not

the trial court docket, such that we conclude this appeal is properly before this Court.

weigh the evidence and substitute its judgment for the fact-finder. *Id*. (citation omitted).

Moreover, "[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting, evidence, it is conclusive on appeal." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa.Super. 2003) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa.Super. 2007) (citation omitted).

As noted, the finder of fact found Appellant guilty of PWID. The Crimes Code has defined the offense of PWID, in relevant part, as follows:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> * * *
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering[,] or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

To establish the offense of PWID, the Commonwealth must prove beyond a reasonable doubt that Appellant both possessed a controlled substance and had the intent to deliver it. *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super. 2003). "In determining whether there is sufficient

evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (citation omitted). "Possession can be proven by showing actual possession, *i.e.*, a controlled substance found on the [appellant's] person, or by showing that the [appellant] constructively possessed the drug." *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983).

It is well-settled that when an individual is found guilty of possessing contraband which was not found on his person, as in the case at bar, the Commonwealth is required to prove that he had constructive possession or joint constructive possession of the contraband. *See Bricker*, 882 A.2d at 1014. Constructive possession is a legal fiction; it is an inference from a set of facts that the defendant more likely than not had control of contraband that was not found on his person. *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). The Pennsylvania Supreme Court defines constructive possession as "conscious dominion" which is "the power to control the [contraband] and the intent to exercise that control." *Commonwealth v. Johnson*, 26 A.3d 1078, 1093 (Pa. 2011) (citation and quotation omitted). Constructive possession is inferred from the totality of the circumstances, and circumstantial evidence may be used to establish constructive possession. *Id.* at 1094.

Here, Appellant contends the Commonwealth failed to prove constructive possession beyond a reasonable doubt. We disagree.

In the instant case, the trial court, sitting as the fact-finder, found credible Officer Hatfield's testimony describing how Appellant constructively possessed the baggies of heroin lying on the ground where he alone had stood just seconds before. Specifically, Officer Hatfield testified that Appellant and another male in a neighborhood known for heroin trafficking instantly stopped what appeared to be a hand-to-hand exchange between them when one of them spotted the officer driving nearby in a patrol car. The men separated, with Appellant walking behind a pickup truck and acting furtively when asked by the officer if he lived in the neighborhood.

The officer noticed Appellant curiously kept his hands down and gestured with his head rather than his hands, and then repeatedly looked down to the ground. When the officer began to open his door, Appellant ran to a residence, pounded on the door and screamed for someone to let him inside. Shortly afterward, Officer Hatfield noticed baggies of heroin lying where Appellant had just stood. A search incident to his arrest uncovered two cell phones on his person, and Appellant's subsequent prison phone call consisted of a conversation discussing what happened to the "six bundles" and expressing frustrations with the police presence keeping customers away.

Considering the totality of this evidence in the light most favorable to the Commonwealth as verdict winner, we conclude enough circumstances existed to infer beyond a reasonable doubt that Appellant constructively

possessed the heroin bundles that lay at his feet. *See Commonwealth v. Hutchinson*, 947 A.2d 800, 806-07 (Pa.Super. 2008) (finding sufficient evidence of constructive possession where defendant observed counting money in park at night, reaching in beams of pavilion where cocaine was secreted, and fleeing when he noticed officers approaching). Accordingly, Appellant's sufficiency challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/24/2019