J-S39022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALHT OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAHIMEL WILLIAMS | |
| Appellant | No. 955 EDA 2018 |

Appeal from the Judgment of Sentence Entered February 15, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001329-2016

BEFORE:  GANTMAN, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 22, 2019**

Appellant, Jahimel Williams, appeals from the February 15, 2018 judgment of sentence imposing an aggregate five to ten years of incarceration followed by five years of probation for possession of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), and several violations of the Uniform Firearms Act.[1]  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On October 31, 2015, shortly after 9:00 p.m., Sergeant Matthew White and his partner were traveling northbound on 23rd Street at the 2400 block of Tasker Street when he noticed a white

---

[*] Former Justice specially assigned to the Superior Court.

[1]  35 P.S. § 780-113(a)(16) and (30); 18 Pa.C.S.A. §§ 6105, 6106, 6106.1, and 6108.

2016 Jeep Grand Cherokee traveling westbound on Tasker Street across 23rd Street. Sgt. White testified that the vehicle had 'extremely dark' tint on the side window and rear windows. An MDT scan of the vehicle's license plates returned that it was a rental vehicle. The officers attempted to stop the vehicle at the 2500 block of Tasker Street, but the vehicle did not immediately stop despite several opportunities to do so. Sgt. White testified that this 'heightened his suspicion.' The officers eventually effected the stopped vehicle on 26th Street and Dickinson Street.

Sgt. White and his partner approached the driver's side and front passenger side windows, respectively. Robert McCrae (Co-defendant) was the driver, [Appellant] was seated behind the driver's seat, and an unidentified third passenger was seated in the front passenger seat. Sgt. White then obtained the driver's information. Sgt. White testified that he had intended to remove and frisk the occupants of the vehicle due to the totality of events that led to the stop, citing several reasons: 1) the 2400 block is a high crime area; 2) the vehicle had an excessive amount of tint; 3) the 'long delay' between the his [sic] first attempt to stop the vehicle and when it finally did stop; and 4) the fact that it was a rental vehicle with excessive tint. Specifically, Sgt. White testified that due to the excessive tint on the vehicle, he would not be able to maintain observation of the occupants should he return to his vehicle to check the driver's information.

As Sgt. White removed the co-defendant from the car, he observed a small, translucent container fall from the co-defendant's lap and land on the floorboard. Sgt. White testified that its contents appeared to be marijuana. He immediately placed the co-defendant under arrest and summoned additional police units to assist with the removal of Appellant and the third passenger. Once the driver was secured in the back of the police vehicle, Sgt. White returned to inspect the container that had fallen from the driver's lap and verified that it did, in fact, contain marijuana. [Appellant] and third passenger were removed from the vehicle and placed in separate police cars. Sgt. White then proceeded to inspect the car and noticed some loose paneling on the center console. He knew from his training and experience that natural voids frequently exist within this area of the vehicle where firearms and narcotics are often hidden. As Sgt. White further inspected the area, he felt a thick cloth beneath the paneling that was not part of the vehicle. He removed a sock with a single bullet wrapped inside of it.

- 2 -

Sgt. White testified that the bullet 'heightened [his] suspicion' that a firearm was in the vehicle. He proceeded to inspect an air vent with a loose panel, misaligned grates, and an attached air freshener. He recovered a plastic bag containing 133 clear bags of heroin stamped 'Monroe,' a loaded firearm, and a torn piece of black cloth. He also recovered six cell phones from inside the vehicle and a car rental agreement in Appellant's name. Finally, the officers searched the all [sic] of the passengers and recovered a cell phone and $202 from the co-defendant, a cell phone (but no money) from Appellant, and $544 from the third passenger.

Trial Court Opinion, 8/15/18, at 2-4.

On December 13, 2017, the trial court conducted a hearing on Appellant's pretrial motion to suppress the evidence recovered from the vehicle search. After the trial court denied relief, the parties proceeded to a bench trial the following day. The trial court found Appellant guilty and imposed the sentence as set forth above. This timely appeal followed.

Appellant raises two assertions of error: that the trial court erred in denying his motion to suppress and that the evidence is insufficient as to all charges. We will take these in turn.

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. McClellan*, 178 A.3d 874, 880–81 (Pa. Super. 2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016)). Our scope of review is limited to the suppression hearing transcript. *In re L.J.*, 79 A.3d 1073 (Pa. 2013).

Appellant argues the suppression court erred because police did not have reasonable suspicion for the vehicle stop and because police had no lawful basis for the vehicle search. Appellant's brief contains no law in support of his challenge to the vehicle stop, and we can deem that portion of the argument waived for that reason. Pa.R.A.P. 2119(f); *Commonwealth v. Hernandez*, 39 A.3d 406, 412 (Pa. Super. 2112), *appeal denied*, 63 A.3d 1244 (Pa. 2013). In any event, the record reflects that, prior to the stop, Sergeant White observed an "extremely dark tint" on vehicle's rear windows. N.T. Suppression, 12/13/17, at 12. The tint was so dark Sergeant White could not see through the windows. *Id.* at 13, 24-25. Furthermore, a license plate scan revealed that the vehicle was a rental, and Sergeant White knew that a rental car would not have darkly tinted windows. *Id.* at 14, 18-19. Sergeant

White therefore had reasonable suspicion[2] to stop the vehicle for a violation of the Motor Vehicle Code.[3]

Appellant also argues that the vehicle search was unlawful. In **Commonwealth v. Gary**, 91 A.3d 102, 104 (Pa. 2014) (plurality),[4] our Supreme Court held, in accordance with federal law, that police may conduct a warrantless search a stopped vehicle if they have probable cause to do so, regardless of any exigency beyond the vehicle's inherent mobility. In **Gary**, as here, police stopped a vehicle for excessive window tint. **Id.** at 104. As police approached the stopped vehicle, they notice an odor of marijuana coming from the vehicle. **Id.** The driver acknowledged that there was some "weed" in the car. **Id.** A search of the vehicle revealed a two-pound bag of marijuana under the hood. **Id.** The **Gary** Court held that the vehicle search

---

[2] A police officer has authority to stop a vehicle upon reasonable suspicion of a violation of the Motor Vehicle Code. 75 Pa.C.S.A. § 6308(b). Reasonable suspicion exists where a police officer has a particularized and objective basis for suspecting the violation. **Commonwealth v. Reppert**, 814 A.2d 1196, 1203-04 (Pa. Super. 2002).

[3] 75 Pa.C.S.A. § 4524(e)(1) ("No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.").

[4] Then-Justice Saylor joined the opinion announcing the judgment of the court (authored by Justice McCaffery and joined by Chief Justice Castille and Justice Eakin) subject to his observations about "inconsistency in the courts' rejection of bright-line rules restraining law enforcement as a means of protecting individual rights, while simultaneously embracing such rules when they facilitate law enforcement." **Gary**, 91 A.3d at 138-39 (Saylor, J. concurring).

was lawful, as there was not dispute that police had probable cause. *Id.* at 138.

The facts of the instant case are very similar, in that police lawfully stopped the vehicle for excessive window tint, and then Sergeant White observed a packet of marijuana falling from the driver's lap as he exited the vehicle. Given Sergeant White's direct observation of marijuana, he clearly had probable cause for the vehicle search.

Appellant acknowledges **Gary**, but argues that **Commonwealth v. Shiflet**, 670 A.2d 128, (Pa. 1995) is "more on point" in this case. Appellant's Brief at 17. In **Shiflet**, the defendant was the passenger in a lawfully stopped vehicle. **Shiflet**, 670 A.2d at 128-29. Police arrested the driver for DUI, and another passenger for disorderly conduct, but did not arrest the defendant. *Id.* Police offered the defendant a ride home, as she did not have a driver's license, but searched her purse without her consent before permitting her to ride in a police cruiser. *Id.* at 129. The purse search revealed a small pouch of marijuana, and the defendant was placed under arrest. *Id.* Our Supreme Court held that the purse search was unlawful, because the defendant was not under arrest at the time, and because the Commonwealth conceded that police had no probable cause or reasonable suspicion that the defendant had engaged in any illegal activity. *Id.* at 130-33.

Appellant's reliance on **Shiflet** is entirely misplaced. **Shiflet** involved the search of the defendant's personal effects after she was ordered out of the

vehicle. The instant case involves a vehicle search after a police officer observed marijuana falling from the driver's lap as he exited the vehicle. Appellant also states that the search of various compartments in the vehicle was unlawful, but he cites no law in support of this argument. Appellant's Brief at 16-17.

In short, Appellant has failed to articulate any basis upon which the either the vehicle stop or the vehicle search was unlawful. We therefore reject Appellant's first argument.

Next, Appellant claims the evidence was insufficient as to all of his charges. Appellant's Pa.R.A.P. 1925(b) statement and his appellate brief clarify his particular challenge—that the Commonwealth failed to prove Appellant was in constructive possession of controlled substances or firearms. Our standard of review is *de novo*, and "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420–21 (Pa. 2014).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013). A defendant's mere presence at a place where contraband is found is not, without more, sufficient to prove conscious dominion. *Commonwealth v. Parrish*, 191 A.3d 31 (Pa. Super. 2018), *appeal denied*, 202 A.3d 42 (Pa. 2019). Additionally, our Court has recognized that "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011).

Appellant notes that the firearm and the controlled substances were retrieved from the front of the vehicle, and he was in the rear passenger seat. He relies on *Parrish*, in which this Court vacated controlled substances, paraphernalia, and firearms convictions of a backseat vehicle passenger. In *Parrish*, police effected a vehicle stop for a window tint violation. Police, after observing marijuana in plain view, searched the vehicle and located drugs and a gun in a bag on the floor by the front passenger seat. *Parrish*, 191 A.3d at at 32-33. Marijuana was in the cup holder of the front passenger side door and another firearm was under the front passenger seat. *Id.* at 33. Police found a magazine of bullets in the glove compartment and a bulletproof vest in the trunk. *Id.* The defendant was not the registered owner of the vehicle and did not have a key to the glove compartment or trunk. *Id.* at 34. Neither firearm was registered to him. *Id.* at 38. The defendant was cooperative and correctly identified himself. *Id.* at 34. The driver was straddling the console

between the driver's seat and front passenger seat when police approached the vehicle. *Id.* at 33. A witness testified that the defendant was receiving a ride home from a party, and that he did not have a bag with him when he entered the car. *Id.*

Thus, the defendant did not own or have a key to the car, and he was seen getting into the car without the black bag. The evidence indicated that he merely accepted a ride home from a party. The driver was exhibiting furtive movements in the front of the vehicle as police approached, whereas the defendant was in the back and placed his hands on the headrest. Thus, there was no positive connection between the defendant and the vehicle or the contraband, and his connection to the contraband was a matter of speculation. Under those circumstances, this Court concluded that evidence of his constructive possession of the contraband was insufficient. *Id.* at 38.

Several important pieces of evidence distinguish this case from **Parrish**. First, the vehicle was rented in Appellant's name. Second, the rental vehicle had an obvious alteration—the side and rear windows were tinted so dark that police could not see inside the vehicle. Sargent White testified that in his experience, a rental vehicle would not have an illegal tint. N.T. Suppression, 12/13/17, at 18-19. Thus, the trial court could reasonably infer that Appellant was aware that his rental vehicle had been altered to conceal the vehicle's contents. Given this, the court also could reasonably infer that Appellant was aware of other alterations—to the center console and air vent—done for the

same purpose. The instant record, unlike that of **Parrish**, establishes much more than Appellant's mere presence in the vehicle. He was present in his own rental vehicle, which was subsequently altered to conceal contraband. The court was free to discredit Appellant's claims that he re-rented the vehicle to make money, and that he just happened to be in the vehicle when police pulled it over.

In summary, the evidence, construed in a light most favorable to the Commonwealth, supports an inference that Appellant had knowledge of and exercised conscious dominion over the controlled substances and firearm in his altered rental vehicle. We therefore reject Appellant's claim that the Commonwealth failed to produce sufficient evidence of constructive possession.

In light of all of the foregoing, we reject Appellant's assertions of error and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/19