**[J-47-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 29 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 1/30/18 at No. 2176 |
| | : | EDA 2015 affirming the judgment of |
| v. | : | sentence entered on 6/2/15 in the Court |
| | : | of Common Pleas, Philadelphia County, |
| | : | Criminal Division at No. CP-51-CR- |
| ALANAH F. F. PETERS, | : | 0001270-2012 |
| | : | |
| Appellant | : | SUBMITTED: May 10, 2019 |

***OPINION***

**CHIEF JUSTICE SAYLOR**                    **DECIDED: October 31, 2019**

This appeal involves a challenge to the defendant's conviction, under a constructive-possession theory, of carrying a concealed firearm without a license. We assess whether Appellant's conviction can be sustained on such a theory where the gun was physically held and used by another person during the relevant time.

Viewed favorably to the Commonwealth as verdict winner, *see Commonwealth v. Pruitt*, 597 Pa. 307, 318, 951 A.2d 307, 313 (2008), the facts are as follows. In August 2011, Appellant was involved in a relationship with the victim, Jesse Hicks. On the night in question, August 16 into the early morning hours of August 17, Appellant was visiting Hicks at his apartment. Appellant complained that her father lacked rent money and faced eviction. Hicks showed her $700 in cash and said he would give it to her father. He then put the money in his pocket. Later, after the two had argued, Hicks stated he was no longer willing to give the money to Appellant's father.

Appellant exchanged text messages on her phone and told Hicks, "You're going to get it." Thereafter, two men arrived and Appellant let them in, although Hicks had not authorized her to do so. One was visibly holding a .22-caliber handgun, and the other had no weapon. Hicks came down from his bedroom after Appellant falsely told him a friend of his had arrived. When Hicks saw the men and the gun, he ran back upstairs. The men gave chase and forced their way into his bedroom. One ransacked the room, demanding money – which Hicks denied having – while the other trained his gun on Hicks. Unable to find any cash, the unarmed man told the other to "hit him one time." The latter fired a shot which pierced Hicks' jaw, tongue, and shoulder, and dislodged some of his teeth. The assailants kicked Hicks in the face and left the room. Appellant, who had remained outside the room, suggested they check Hicks' pockets. The men re-entered the room and, as Hicks lay bleeding on the floor, removed his pants, took his $700, and fled. They were never identified or apprehended. Hicks was taken to the hospital where he was treated and released several days later.

Appellant was charged with numerous offenses including attempted murder, robbery, aggravated assault, and conspiracy. Most relevant to this appeal, she was charged with carrying a concealed firearm without a license per Section 6106 of the Crimes Code. Subject to exceptions not presently relevant, that provision states that

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter [*i.e.*, Chapter 61, relating to "firearms and other dangerous articles"] commits a felony of the third degree.

18 Pa.C.S. §6106(a)(1).

At trial, the parties stipulated that Appellant did not have a license to carry a firearm. The jury found her guilty on all charges. She was sentenced to an aggregate term of 13 to 30 years' imprisonment.

Appellant appealed, questioning, *inter alia*, whether the evidence was sufficient to support her conviction under Section 6106(a)(1). The Superior Court affirmed in a non-precedential decision. *See Commonwealth v. Peters*, No. 2176 EDA 2015, *slip op.*, 2018 WL 617947 (Pa. Super. Jan. 30, 2018). The court initially expressed that she had been convicted pursuant to a constructive-possession theory.[1] After reciting the standard for constructive possession and briefly reviewing the events as described above, the intermediate court summarily concluded that Appellant "had the power to control the firearm and the intent to exercise that control and, therefore, constructively possessed the firearm." *Id.* at *7. The court did not discuss concealment of the gun.

We allowed further review, limited to the issue of whether the Superior Court erred in rejecting Appellant's sufficiency challenge in relation to her conviction, under a constructive theory, of carrying a concealed firearm without a license. *See Commonwealth v. Peters*, ___ Pa. ___, 192 A.3d 1112 (2018) (*per curiam*).[2]

---

[1] The trial court indicated Appellant may also have been convicted as an accomplice because, in its view, the evidence was sufficient for the jury to find that the individual who shot Hicks did not have a firearms license although his identity remained unknown. *See Commonwealth v. Peters*, No. CP-51-CR-0001270-2012, *slip op.* at 14-15, 17 (C.P. Phila. June 13, 2017). The only stated basis for this assertion was that the shooter used the gun in a "vicious" manner and put it in his pocket while fleeing from the scene. *Id.* at 17. The Superior Court disapproved the trial court's reasoning and clarified that Appellant's conviction could only be supported, if at all, as a principal based on a constructive-possession predicate. *See Peters*, 2018 WL 617947 at *7 n.3. As such, and consistent with our grant of allocatur and the parties' briefs, the only issue before this Court is whether the trial evidence was adequate to sustain Appellant's conviction as a principal.

[2] We phrased the issue for review in terms of Appellant's "conviction for carrying a firearm without a license." While that wording could potentially subsume the distinct offense of carrying an unlicensed firearm on the public streets of Philadelphia, *see* 18 Pa.C.S. §6108, of which Appellant was also convicted, Appellant has not included in her brief any advocacy relating to Section 6108, opting instead to focus on Section 6106. Thus, we do not address Appellant's conviction under Section 6108.

Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. *See Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, *accord State v. Jones*, 45 P.3d 1062, 1064-65 (Wash. 2002) (*en banc*), or was otherwise able to govern its use or disposition as if in physical possession. *See, e.g., People v. Sinclair*, 19 P.2d 23 (Cal. Ct. App. 1933) (finding constructive possession where the defendant was driving an automobile and, upon being stopped by the police, directed his passenger to throw illegal drugs out of the window). Mere presence or proximity to the contraband is not enough. *Accord Rivas v. United States*, 783 A.2d 575, 581 (D.C. 2001); *State v. Foster*, 282 P.3d 560, 568 (Haw. 2012); *Jones*, 45 P.3d at 1065. Constructive possession can be established by inferences derived from the totality of the circumstances. *See Commonwealth v. Johnson*, 611 Pa. 381, 407, 26 A.3d 1078, 1094 (2011).

Appellant contends the constructive-possession doctrine may be useful in cases where drugs are found in a location, such as a residence or an automobile, over which the defendant maintains dominion and control. She continues that narcotics offenses are particularly amenable to government claims of joint and constructive possession in light of the variables inherent to such crimes, which often involve shared access to locations and to drugs intended for distribution. Appellant questions, however, whether such usefulness extends to a "singular weapon physically and exclusively possessed by only one person in the course of a crime . . . where shared access to and equal control over the weapon by the non-possessor is normally lacking[.]" Brief for Appellant at 14-

15. She argues such difficulties are especially pronounced where, as here, there is no evidence that the defendant supplied the firearm or directed the other person to use it. In this respect, she references aspects of *Commonwealth v. Knox*, 629 Pa. 467, 105 A.3d 1194 (2014), in which this Court observed:

> The concepts of joint and constructive possession resonate more readily in the setting of crimes grounded on possession in the abstract, *see, e.g.*, 35 P.S. §780-113 (possession with intent to deliver), as contrasted with an offense permutation premised upon the specific conduct of "carr[ying] a firearm concealed about his person," 18 Pa.C.S. §6106(a)(1), which at least facially suggests a form of actual physical possession.

*Id.* at 473 n.6, 105 A.3d at 1198 n.6, *quoted in* Brief for Appellant at 14. Overall, Appellant emphasizes that, in light of the specific conduct criminalized by Section 6106(a)(1) – the carrying of a firearm concealed about one's person – she should not be held liable as a principal on a constructive-possession predicate relative to the gun used in the crimes of which she was convicted as an accomplice.

For its part the Commonwealth states, initially, that "[t]he purpose of the constructive possession doctrine is to expand the scope of possession statutes to encompass those cases where actual possession at the time of arrest cannot be shown but where the inference that there has been actual possession is strong." Brief for Commonwealth at 13-14 (quoting Charles Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 U. Va. L. Rev. 751, 755 (1972) (hereinafter, "*To Have and Have Not*")); *see also id.* at 20.[3] The Commonwealth continues by asserting that constructive possession is an important crime-fighting construct because, without it, offenders could escape liability "through the simple

---

[3] Although this sentence from *To Have and Have Not* has been repeated in some Pennsylvania decisions, it is unclear how it applies to the present matter, as there has been no suggestion that Appellant physically possessed the weapon prior to the incident or prior to her arrest. This apparent disconnect is discussed below.

expedient of leaving a contraband item a short distance from them during a criminal episode." *Id.* at 15. The Commonwealth posits several hypothetical scenarios in which a drug dealer might consummate a sale without physically possessing the drugs. In relation to gun possession, the Commonwealth again suggests hypothetical examples, advancing that: a gun left in a bag to which multiple co-conspirators have access can be deemed to be controlled, and thus possessed, by each; and a father might, from his office, instruct his minor child to bring him an unlicensed firearm, thereby violating Section 6106 notwithstanding that he only physically possessed the gun in a permitted location. *See id.* at 15-17 & n.4

In an effort to demonstrate that shared access to a concealed firearm can occur during a robbery, the Commonwealth proposes yet more hypothetical scenarios, including ones in which the defendant supplies another with a firearm and also directs that person to conceal it prior to confronting a third party, or is aware of his companion's concealed firearm and, upon confronting a third party, grabs it from his companion and chases the third party. In this regard, the Commonwealth reads Section 6106(a)(1)'s scope as encompassing circumstances where the gun is concealed on the person of another or in a separate item such as a bag or knapsack on the ground. *See id.* at 20-24. While conceding that to "carry," as that term is used in the statute, "emphasizes the immediacy of the possession," *id.* at 24, the Commonwealth cautions against an overly-narrow understanding of the verb – which it views, not as reflecting that the firearm must be located on the defendant's person, but as a way for the General Assembly to exclude situations in which an unlicensed firearm is safely stored in an exempt location. *See id.*

In terms of the present case, the Commonwealth maintains that Appellant's power and intent to control the handgun used in the crime can be discerned from the

evidence that she planned the robbery and participated in it. According to the Commonwealth, such an inference reasonably arises from Appellant's conduct in exchanging text messages prior to the offense, her statement that Hicks was "going to get it," her knowledge that he had cash on his person and would be vulnerable to attack, her false statement to Hicks that a friend of his had arrived, and her suggestion to the assailants that they check Hicks' pockets for the money after she was aware that Hicks had been shot. *See id.* at 28-29.[4]

Because the Commonwealth utilizes the passage from *To Have and Have Not* referring to a strong inference of prior actual possession in the present case – where no such inference exists, *see supra* note 3 and accompanying text – we pause to address it. The language, as noted, has occasionally been referenced by Pennsylvania courts. *See, e.g.*, *Commonwealth v. Carroll*, 510 Pa. 299, 302, 507 A.2d 819, 820 (1986).[5] In the commentary (which is concerned with drug possession cases), the authors recommend a two-part analytical framework for finding constructive possession which focuses on (a) exclusive control over the area where the contraband is found, and (b)

---

[4] The Commonwealth also points to evidence that, after the robbery, Appellant sought to convince a neighbor to tell the police she was not involved in the crime. The Commonwealth's theory is that Appellant must have thought Hicks was dead and, as such, would not have been able to overhear or contradict the neighbor's statement to police. *See id.* at 28-29 & n.9. In our view, such proofs have little connection to Appellant's ability and intent, or lack thereof, to exercise dominion and control over the firearm.

Separately, the Commonwealth suggests the robbery could not have been carried out without the use of a firearm. *See id.* at 30. However, it does not refer to any evidence to support this theory, and our review of the record does not reveal any.

[5] The formulation stems from an appendix to a report by a national commission on drug use – the relevant portion of which referred to an "exceedingly strong" "inference that there has been [actual] possession at one time[.]" *Id.* at 755 (quoting FIRST REPORT OF THE NATION COMMISSION ON MARIHUANA AND DRUG ABUSE, Appendix, 139 (1972)).

evidence of prior physical possession. *See To Have and Have Not*, 58 U. Va. L. Rev. at 766-74. Still, we note that, as the law has developed, it has largely sought to characterize constructive possession in terms of a dominion-and-control assessment as outlined above. *See, e.g., Johnson*, 611 Pa. at 407, 26 A.3d at 1093-94; *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). Thus, and as the present case illustrates, courts and prosecutors have not treated evidence of prior physical possession as a necessary prerequisite to constructive possession.

We do not deny that in some situations evidence of prior actual possession may contribute to a finding of constructive possession at the time the offense is alleged to have occurred. Because of its confusing admixture of constructive and actual possession, however, we believe the better practice is for courts and litigants to limit use of the passage from *To Have and Have Not* to cases in which there is, in fact, a strong inference of pre-arrest physical possession. Where such evidence of physical possession exists, moreover, it is important that the jury be apprised of whether a conviction is being sought based on a physical possession or constructive possession theory. *See generally State v. Arnold*, 794 N.W.2d 397, 400-01 (Minn. Ct. App. 2011) (indicating the reviewing court was placed in an "awkward position" because at trial the state had sought conviction only on a constructive theory when, in fact, the evidence showed that the defendant had had physical possession of the contraband).

Turning to the evidence in this case, it is clear that Appellant did not, herself, steal money from Hicks or physically harm him. Her convictions on the most serious charges were based on evidence that she was involved in, assisted in, and perhaps even helped plan, the overall criminal undertaking during which the two men gained entry into Hicks' residence, assaulted him, and stole his money. The factors relied on by the Commonwealth purportedly to demonstrate constructive possession most directly

implicate concepts of vicarious liability as set forth in the Crimes Code.  Such factors undoubtedly contributed to the jury's guilty verdict in relation to criminal conspiracy, *see* 18 Pa.C.S. §903, as well as her culpability as an accomplice to attempted murder, aggravated assault, and robbery.  *See* 18 Pa.C.S. §306(c)(1) (stating that a person bears liability as an accomplice if, with the intent of promoting or facilitating an offense, he solicits another person to commit it or aids or agrees or attempts to aid such other person in planning or committing it).  As discussed, however, it is law of the case that Appellant's conviction under Section 6106(a)(1) could not have been grounded on her role as an accomplice.  *See supra* note 1.  Thus, we assess whether it could have been based on constructive possession of the gun at the relevant time.

In evaluating the concept of constructive possession, as it applies in the context of Section 6106(a)(1), it is important to take into account the specific wording chosen by the General Assembly.  In particular, and as expounded in the above passage from *Knox*, guilt does not depend solely on possession combined with a specific mental state – as it does, for example, with offenses such as possession of an instrument of crime, *see* 18 Pa.C.S. §907(a) (making it an offense to possess an instrument of crime with intent to employ it criminally), possession of a controlled substance with intent to deliver, *see* 35 P.S. §780-113(a)(30), or knowing or intentional possession of a designer drug, *see id.* §780-113(a)(36).  *See generally Commonwealth v. Herman*, 639 Pa. 466, 494, 161 A.3d 194, 211 (2017).  Rather, the prohibited conduct is phrased in terms of carrying a firearm in a vehicle or concealed on one's person.  In light of this circumstance, Appellant provides the following explanation:

> In the context of carrying a weapon in a vehicle, the doctrine of constructive possession has some utility since many people will temporarily set down or place a weapon they are "carrying" on the floor or in the glove box.

The doctrine does not flow so easily when the person is charged with carrying the firearm concealed on or about his person, which requires proof of both carrying and concealment; acts that are normally committed by only the actual possessor of the firearm.

Brief for Appellant at 15-16 (citations omitted).

The Commonwealth responds by suggesting it is sufficient that the person who physically possessed the weapon concealed it on *his* person, so long as the accused had constructive possession. The Commonwealth further contends it was reasonable for the jury to conclude that the shooter did, in fact, conceal the weapon. Inasmuch as the weapon was clearly visible by the time the shooter entered Hicks' residence, the Commonwealth falls back on a suggestion that the shooter must have concealed it on his way to the residence. *See* Brief for Commonwealth at 31-32.

The Commonwealth's argument fails in multiple respects. First, there was no testimony touching on whether the gun was concealed or openly visible while it was being carried to Hicks' home. What the Commonwealth describes, in essence, as a reasonable inference sufficient to support a finding of concealment beyond a reasonable doubt, is little more than speculation and conjecture. *See In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970) (explaining that the Due Process Clause requires the government to prove beyond a reasonable doubt every fact necessary to constitute the offense).

Second, even if the parties had stipulated that the shooter concealed the weapon while carrying it to Hicks' residence, that would be insufficient to conclude Appellant had concealed it about *her* person. Section 6106(a)(1) prohibits the carrying of a firearm "concealed on or about his person," meaning, the defendant's person. 18 Pa.C.S. §6106(a)(1). As noted, in *Knox* we addressed accomplice liability relative to this framing of the offense, and, in the passage quoted above, emphasized that such liability fits most comfortably with crimes prohibiting possession in more abstract terms. *See*

*Knox*, 629 Pa. at 473 n.6, 105 A.3d at 1198 n.6.  We now affirmatively reject, as contrary to the plain text of the statute, the concept that concealment on or about a different individual's person can satisfy the concealment prerequisite of Section 6106(a)(1).  When the General Assembly has intended to subsume concealment by an accomplice within a penal provision, it has so stated.  *See, e.g.*, 42 Pa.C.S. §9712.1(a).[6] It did not so indicate in Section 6106(a)(1), and a judicial construction allowing for criminal responsibility founded on the concealment of the weapon about another's person would impermissibly broaden the scope of the offense beyond that which the Legislature has specified.  This, in turn, is fatal to the Commonwealth's allegation that, via constructive possession, Appellant's conduct violated Section 6106(a)(1).

The order of the Superior Court is reversed insofar as it affirmed Appellant's conviction pursuant to Section 6106 of the Crimes Code, and the matter is remanded for further proceedings consistent with this opinion.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.
Justice Mundy files a concurring opinion.

---

[6] Section 9712.1(a) has been declared unconstitutional under *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151 (2013).  *See Commonwealth v. Newman*, 99 A.3d 86, 98 (Pa. Super. 2014).