J-A01016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BARON C. SMITH | : | No. 2783 EDA 2018 |

Appeal from the Order Entered August 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0000776-2018

BEFORE: BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OLSON, J.: **FILED MARCH 23, 2021**

The Commonwealth of Pennsylvania (the Commonwealth) appeals from the order entered on August 27, 2018, denying its motion to reinstate criminal charges against Baron C. Smith (Smith).[1] We reverse, reinstate criminal charges, and remand for further proceedings.

The trial court summarized the facts of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth charged Smith with possession of a controlled substance (35 P.S. § 780-113(a)(16)), possession with intent to manufacture or deliver a controlled substance (35 P.S. § 780-113(a)(30)), possession of a small amount of marijuana (35 P.S. § 780-113(a)(31), possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), and criminal conspiracy (18 Pa.C.S.A. § 903). The Commonwealth also charged Smith with possessing an instrument of crime and violations of the Uniform Firearms Act, but those offenses are not currently at issue.

On January 10, 2018, several different law enforcement agencies executed an arrest warrant for an individual at a house on [] Mercer Street [in Philadelphia County].[2]  Law enforcement performing the arrest further obtained a search warrant because officers discovered drugs in plain view inside the house during the execution of the arrest warrant.  Officers executing the search warrant discovered large amounts of drugs, equipment to manufacture drugs, and drug paraphernalia.  Police did find [] Smith inside the house at the time throwing guns outside [from the] third floor.  In addition, police discovered [an identification card with Smith's photograph and alias, Baron Coleman], which listed a different address as his residence, in a draw[er] in the kitchen.[3]  [Smith] was arrested and charged with nine [criminal offenses] including the [] five charges at issue in this appeal.

Trial Court Opinion, 2/20/2020, at 1-2.

The case progressed as follows.  On April 18, 2018, the Philadelphia Municipal Court held a preliminary hearing and dismissed the four narcotics related offenses and the conspiracy charge against Smith.   Thereafter, the Commonwealth filed a motion to refile the dismissed charges with the trial court.  The trial court held a hearing on August 7, 2018, wherein it heard

---

[2] As will be discussed, while executing the arrest warrant for Smith at the subject residence, law enforcement personnel, from outside the residence, witnessed Smith attempting to throw two firearms from a third floor balcony. Once inside, police detained Smith coming down the stairs from the third floor and discovered two other individuals were present – William Crawford (Crawford) and an unknown woman.  Police found Crawford in a second floor bathroom disposing of narcotics in a toilet and defecating on them.  The unknown woman was in the basement wherein police also discovered in plain view large amounts of drugs, equipment to manufacture and package drugs, drug paraphernalia, and a notebook of tally sheets for "tacos".

[3]  In the same kitchen drawer, law enforcement found narcotics, a chemical agent used for "cutting" narcotics, and a digital scale.  They also recovered $10,000.00 in currency from the freezer.

additional testimony and considered the incorporated notes of testimony from the prior proceeding before the Philadelphia Municipal Court. The trial court denied the Commonwealth's motion to reinstate charges by order entered on August 27, 2018.[4]

Ultimately, the trial court determined:

[The Commonwealth] did not introduce any DNA or physical evidence that directly connected [Smith] with the manufacturing or possession of drugs or drug paraphernalia. [The Commonwealth] instead asserted [] constructive possession [] in its closing argument.

Trial Court Opinion, 2/20/2020, at 2.

More specifically, the trial court concluded:

The evidence [the] Commonwealth presented [] was insufficient to meet the *prima facie* requirement for the five charges not reinstated. First, the evidence presented does not infer constructive possession […] of the drugs found inside the house to [Smith]. [Smith] was not found making any drugs, using any drugs, or interacting with any drugs at the time of the execution of the arrest and search warrants. In addition, [an identification card with Smith's photograph and alias, Baron Coleman, discovered by police in a kitchen drawer] did not list the house at issue as his actual primary address nor is there any evidence [Smith] was living or staying at the house to infer constructive possession. His presence at the house does not automatically

_____

[4] This timely appeal resulted. On September 18, 2018, the Commonwealth filed a notice of appeal and certified that the trial court's order terminated or substantially handicapped the prosecution to take an interlocutory appeal as of right pursuant to Pa.R.A.P. 311. On January 27, 2020, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied timely on February 14, 2020. On February 20, 2020, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

infer constructive possession. [The] Commonwealth did not present DNA evidence or any other evidence that demonstrated [Smith] had any ownership over the drugs and other items in the house [or that Smith] had an intent to manufacture or deliver the drugs or drug paraphernalia.

\* \* \*

[C]onspiracy cannot be inferred from the evidence to establish a *prima facie* case. [The] Commonwealth offered no evidence that any agreement to commit a crime occurred. [The trial court could not] point to the charge or charges [for which] a conspiracy exist[ed. Instead, the trial court posited:] Is [the] Commonwealth saying [Smith] conspired to sell drugs, to manufacture drugs, or all three? Those questions were never resolved [by the Commonwealth] and [the trial court did not] infer any possible guilt at all based upon the evidence presented [and, therefore, the trial court refused to] reinstate charges.

*Id.* at 4-5.

On appeal, the Commonwealth presents the following issue for our review:

Did the [trial] court err as a matter of law in finding that there was insufficient evidence to establish a *prima facie* case of possession of controlled substances with intent to deliver, knowing and intentional possession, criminal conspiracy, possession of marijuana, and possession of paraphernalia, where the [trial] court failed to draw inferences in favor of the Commonwealth as legally required and overlooked the key evidence that [Appellant] lived in the home where he was arrested and over $350,000[.00] worth of drugs and paraphernalia were found?

Commonwealth's Brief at 4.

In sum, the Commonwealth argues:

The evidence, when properly viewed in the light most favorable to the Commonwealth, established a *prima facie* case for each of [Smith's] charged crimes. Officers executed an arrest warrant for [Smith] at [the residence on] Mercer Street, the house that [Smith] had moved into two weeks prior. When officers arrived, [Smith] and William Crawford began to hide their contraband;

[Smith] tried to throw handguns on the roo[f] while Crawford tried to flush drugs down the toilet and defecate on them. The officers discovered over $350,000[.00] worth of drugs throughout the house, most of which was packaged and stamped for sale. They also found an abundance of paraphernalia used to weigh and package drugs, cutting agents, and a notebook that corresponded to drug sales. [Smith's] alias identification card was found in a kitchen drawer next to drugs, cutting agents, and an electric scale. The [trial] court, rather than accepting all evidence and reasonable inferences in the light most favorable to the Commonwealth as required by law, made improper evidentiary rulings and failed to consider much of the evidence presented.

Viewing the evidence properly under the legally governing standard for having a case held for trial, the Commonwealth produced sufficient evidence that, if believed, would establish that [Smith] constructively possessed the drugs found in the house he lived in, and that he intended to sell those drugs in conjunction with his partner, William Crawford. Therefore, [the Commonwealth maintains] this Court should vacate the erroneous dismissal and remand for trial on all charges.

*Id.* at 9-10.

Our Supreme Court has stated:

It is well-established that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary.

It is equally well-settled in our jurisprudence that a preliminary hearing is not a trial, that the principle function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention, and that the Commonwealth bears the burden at the preliminary hearing of establishing a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it. The evidence supporting a *prima facie* case need not establish the defendant's guilt beyond a reasonable doubt, but must only demonstrate that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to proceed to a jury.

The Commonwealth establishes a *prima facie* case where it produces evidence of each of the material elements of the crime

charged and establishes probable cause to warrant the belief that the accused committed the offense.

***Commonwealth v. Montgomery***, 234 A.3d 523, 533 (Pa. 2020) (internal citations and quotations omitted).

Moreover, when tasked with reviewing a decision from a preliminary hearing,

> the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. Hence, we are not bound by the legal determinations of the trial court.
>
> \*            \*            \*
>
> To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016) (internal citations and quotations omitted).

Finally, we note that Pennsylvania Rule of Criminal Procedure 542(E) provides:

> (E) Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E).

Our Supreme Court has recently determined that that Rule 542(E) "does not permit hearsay evidence **alone** to establish all elements of all crimes for purposes of establishing a *prima facie* case at a defendant's preliminary

hearing." ***Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020) (emphasis added). This is because the "Commonwealth [cannot rely] exclusively and only on evidence that could not be presented at a trial." ***Id.*** at 736. However, our Supreme Court recognized "instead, subsection (E) is intended to allow some use of hearsay." ***Id.*** at 735.

Here, the Commonwealth charged Smith with one count each of the following narcotics offenses:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

*          *          *

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

*          *          *

30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

(31) Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale.

For purposes of this subsection, thirty (30) grams of marihuana or eight (8) grams of hashish shall be considered a small amount of marihuana.

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 Pa.C.S.A. § 780-113.

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903.

An *en banc* panel of this Court has previously determined:

"In narcotics possession cases, the Commonwealth may [] show[] actual, constructive, or joint constructive possession of the contraband." **Commonwealth v. Thompson**, 428 A.2d 223, 224 (Pa. Super. 1981). Actual possession is proven "by showing that the controlled substance was found on the defendant's person." **Commonwealth v. Macolino**, 469 A.2d 132, 134 (Pa. 1983). If the contraband is not discovered on the defendant's person, the Commonwealth may [show] that the defendant had constructive possession of the drug.

Our Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." **Macolino**, 469 A.2d at 134. In the words of our

- 8 -

Supreme Court, "constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." **Commonwealth v. Johnson**, 26 A.3d 1078, 1093 (Pa. 2011) (internal quotations, citations, and corrections omitted). It is a "judicially created doctrine that enables law enforcement officials to prosecute individuals in situations where the inference of possession is strong, yet actual possession at the time of arrest cannot be shown." Mark I. Rabinowitz, Note, **Criminal Law Constructive Possession: Must the Commonwealth Still Prove Intent?—Commonwealth v. Mudrick**, 60 TEMPLE L.Q. 445, 499–450 (1987).

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the defendant. Our Supreme Court "has recognized that constructive possession may be found in one or more actors where the item at issue is in an area of joint control and equal access." **Johnson**, 26 A.3d at 1094 (internal quotations, citations, and corrections omitted). Nevertheless, "where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." **Commonwealth v. Davis**, 480 A.2d 1035, 1045 (Pa. Super. 1984) (emphasis omitted).

For the Commonwealth to [show] constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either the defendant's participation in the drug related activity or evidence connecting the defendant to the specific room or areas where the drugs were kept. **Commonwealth v. Ocasio**, 619 A.2d 352, 354–355 (Pa. Super. 1993). However, "an intent to maintain a conscious dominion may be inferred from the totality of the circumstances and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." **Macolino**, 469 A.2d at 134–135 (internal citations omitted). Moreover, we agree with the statement from the United States Court of Appeals for the Tenth Circuit that, although "mere presence" at a crime scene cannot [show] possession of contraband:

> [one] need not ignore presence, proximity and association when presented in conjunction with other evidence of guilt. Indeed, presence at the scene where drugs are being processed and packaged is a material and probative factor which [] may [be] consider[ed]. Drug dealers of any size

- 9 -

and illegal drug manufacturers probably are reticent about allowing the unknowing to take view of or assist in the operation.

*United States v. Robinson*, 978 F.2d 1554, 1557–1558 (10th Cir. 1992) (internal quotations and citations omitted); *see also Rivas v. United States*, 783 A.2d 125, 138 (D.C. 2001) (*en banc*) ("a claim of innocent presence becomes decidedly less plausible in an environment (vehicular or otherwise) that is rife with evidence of ongoing drug production or distribution, such as a manufacturing or cutting facility, a warehouse, or a staging or preparation area where a large quantity of drugs or drug paraphernalia is exposed to view"); *United States v. Batista–Polanco*, 927 F.2d 14, 18 (1st Cir. 1991) (casting doubt upon the "hypothesis that participants in a large-scale heroin packaging scheme would permit a noncontributing interloper to remain for an extended period of time in a small apartment while their conspicuous criminal conduct continued unabated since such is not normally the conduct that one would expect of conspirators engaged in conduct which by its nature is kept secret from outsiders") (internal quotations, citations, and corrections omitted); *United States v. Staten*, 581 F.2d 878, 885 n.67 (D.C. Cir. 1978) ("it would seem that the voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation").

*Commonwealth v. Vargas*, 108 A.3d 858, 868–869 (Pa. Super. 2014) (*en banc*) (original brackets and ellipses omitted).

In this case, based upon our review of the certified record, the Commonwealth presented the following evidence at the preliminary hearing held on April 18, 2018. On January 10, 2018, Philadelphia police officers and a United States Marshal task force from the Drug Enforcement Administration (DEA) executed an arrest warrant for Smith, also known as Baron Coleman, at the subject residence. N.T., 4/18/2018, at 5. A marshal knocked on the door and Detective Garrett Cullen "observed [Smith] come out of a door on[to]

the third floor [landing or balcony] and attempt[] to throw two handguns on to the roof." *Id.* at 6. Marshals forced entry into the home and, once inside, Detective Cullen saw Smith coming down a staircase from the second floor into the main living room. *Id.* at 23. Detective Cullen identified Smith at the preliminary hearing. *Id.* at 6. Detective Cullen testified that he ultimately retrieved a firearm from the third floor balcony and a firearm from the roof. *Id.* at 23.

Law enforcement recovered narcotics and drug paraphernalia from multiple locations throughout the residence. In the basement, law enforcement recovered multiple bags of a mixture of heroin and Fentanyl weighing approximately 1000 grams, over two hundred individual packets of narcotics marked "Cartier," a hydraulic press used to repackage kilograms of narcotics, a heat sealer, a digital scale, hundreds of empty packets and plastic baggies, a notebook with mathematical notations, and a small amount of marijuana. N.T., 4/18/2018, at 27-29. Moreover, DEA Agent Alan Basewitz testified:

> [I]n the kitchen in a drawer were four baggies of white powder[. T]he aggregate weight was 406 grams[.] They were analyzed by the chemical lab. Three were found to contain cutting agents. One of the bags which weighed 170 grams contained a mixture of heroin and Fentanyl. [T]here was also a digital scale with a white residue that was insufficient for testing purposes. There was an [identification card] in the name of Baron Coleman, who is the target of the investigation whose alias is Barron Smith.

*Id.* at 30. The identification card had Smith's photograph and alias, but listed a different address than the residence at issue. *Id.* at 45-46. Additional

cutting agents were recovered from the freezer. *Id.* In an upstairs bedroom closet there was a nine-gram bag of heroin and Fentanyl mixture and approximately $10,000.00. *Id.* at 31. In that bedroom, police also recovered personal photographs, a Pennsylvania identification card, vehicle registration, and four prescription pill vials for Crawford. *Id.* at 31-33. Finally, Agent Basewitz testified that, in a toilet in the second-floor bathroom, he observed feces and a baggie of white powder that he did not retrieve because of health hazards. *Id.* at 33.

At a subsequent hearing held on August 27, 2018, the Commonwealth adduced the following additional evidence. None of the interior doors were locked or otherwise impeded an individual from moving from room to room throughout the subject residence. N.T., 8/27/2018, at 22-23. Agent Basewitz testified that the identification card found in the kitchen drawer had Smith's photograph on it, but listed a different address. *Id.* at 25. Agent Basewitz testified that he believed that Smith had moved into the subject residence two weeks prior to the arrest, but that he did not hear this directly from Smith. *Id.* at 25-28. Defense counsel objected based upon hearsay and, while the trial court did not explicitly rule on the objection, it asked the Commonwealth to "move on." *Id.* Moreover, Agent Basewitz again testified that "there was a baggie of suspected heroin that was in the toilet bowl on the second floor, but it was not retrieved because there was feces on top of the baggie." *Id.* at 19. Agent Basewitz was not present when Crawford was arrested. *Id.* However, over defense counsel's hearsay objection, the trial court allowed

- 12 -

Agent Basewitz to testify that other officers told him that Crawford was sitting on the toilet when they arrested him. *Id.* at 20-21.

When viewing all of the foregoing evidence together, we conclude that the trial court erred by determining the Commonwealth failed to produce sufficient, *prima facie* evidence to support the five criminal charges as alleged. Here, there is no dispute that Smith was not found in actual possession of narcotics or paraphernalia or that other individuals had equal access to them. As such, the Commonwealth was required to show joint constructive possession, or Smith's ability to exercise conscious dominion over the contraband and the intent to exercise that control, even if another person exercised similar control. Here, the trial court erred by basing its decision almost exclusively on its belief that there was no evidence Smith was living or staying at the house, including the recovery of Smith's identification card that listed a different address. There is simply no requirement that a person reside at the location where narcotics are stored in order to show constructive possession. Instead, the Commonwealth was required to introduce *prima facie* evidence demonstrating either Smith's participation in the drug-related activity or evidence connecting Smith to the specific rooms or areas where drugs were kept or drug-related activity occurred. We conclude that the Commonwealth has met these requirements.

In this matter, the Commonwealth presented evidence, albeit hearsay, that Smith had moved into the subject residence two weeks prior. It was proper for the Commonwealth to present this hearsay evidence at the

preliminary proceedings because, as discussed below, it was not the only evidence relied upon by the Commonwealth. As such, we conclude that there was evidence that Smith resided at the subject residence. Regardless, there is no dispute that Smith's photograph and identification card were recovered from a kitchen drawer alongside narcotics and a scale. Such evidence directly connected Smith to the specific room or area where drugs were kept. Moreover, we cannot ignore Smith's presence, proximity and association with a drug-manufacturing locale when other evidence of his guilt was presented. When law enforcement announced the execution of an arrest warrant for Smith, they witnessed him with unfettered access to the third floor of the residence, throwing firearms outside. There is no dispute that Crawford was in the second floor bathroom, only one floor below Smith, disposing of narcotics and defecating into a toilet. As set forth above, established case law reveals that narcotics dealers are reticent about allowing unknown individuals to take view of or assist in drug operations. Clearly, based upon this record, both Crawford and Smith **simultaneously** discarded contraband based upon law enforcement presence at the residence. As such, we reject Smith's suggestion that he was merely an unaware guest. Smith's presence where a large quantity of drugs and drug paraphernalia were exposed to plain view, along with his active participation in disposing of contraband, was enough to establish a *prima facie* case of joint, constructive possession of narcotics to support the aforementioned criminal charges for trial. Accordingly, the trial court erred by finding otherwise.

- 14 -

Order reversed. Criminal charges reinstated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2021